ARKANSAS LIFE INSURANCE COMPANY v. THE AMERICAN

NATIONAL INSURANCE COMPANY.

Opinion delivered November 10, 1913.

1. CORPORATIONS—CAUSES OF ACTION—SURVIVOR.—Where a corporation has a cause of action against another for torts involving slander, libel, malicious prosecution, fraudulent conspiracy to injure and destroy business, the action does not survive but dies when the plaintiff corporation goes out of existence. (Page 137.)

2. ACTIONS—SURVIVOR.—Injuries that are not of a physical nature, and that do not operate upon or affect tangible personal property, as distinguished from property rights or interests, do not survive, and are not assignable. (Page 137.)

3. CONSPIRACY—COMPLAINT—NECESSARY ALLEGATIONS.—In an action for damages against appellee for planning and executing a conspiracy to destroy appellant's business, an allegation that appellee secured employees of appellant to break their contracts with appellant, does not state a cause of action, because no contract is set out, no names of employees given, and no specific acts alleged. (Page 138.)

4. PLEADING—SUFFICIENCY OF ALLEGATIONS OF COMPLAINT—DEMURRER.
   —In testing the sufficiency of a pleading by general demurrer,
   every reasonable intendment should be indulged to support it.
   If the facts stated in a complaint, together with every reasonable
   inference therefrom, constitute a cause of action, then a demurrer
   thereto should be overruled.   (Page 139.)

5. PLEADING—COMPLAINT—FAILURE TO STATE CAUSE OF ACTION—AMEND-
   MENT.—When a complaint fails to state a cause of action at all,
   it can not be amended on motion to make more specific.   (Page
   139.)

Appeal from Pulaski Circuit Court, Second Division; *Guy Fulk,* Judge; affirmed.

### STATEMENT BY THE COURT.

The appellant brought suit against the appellees to recover damages alleged to have accrued to appellant from the conduct of the appellees in planning and executing a conspiracy to destroy appellant's business and the business of the Industrial Mutual Indemnity Company, a corporation to whose assets and business appellant became successor.

The first paragraph of the complaint set up the organization of appellant and appellee, American National Insurance Company, stated the business they were engaged in, and that Smith was in the employ of appellee, American National Insurance Company as general agent for Arkansas.

The second paragraph alleged the organization of the Industrial Mutual Indemnity Company, and set forth that it was engaged in the industrial insurance business until the 28th of February, 1911, when the appellant, by contract with it, reinsured its policy holders and took over all of its assets.

The third and fourth paragraphs set forth at length the manner in which the mutual company carried on its business of insurance, and alleged that the defendant, Smith, while he was the general superintendent of the mutual company, in September, 1910, clandestinely entered into a contract with his co-defendant to enter at some future time the employment of the American Na-

tional Insurance Company, and in the meantime to "organize and execute a conspiracy to destroy the appellant and the mutual company."

The fifth and sixth paragraphs alleged that defendants had conspired together to destroy appellant as a competitor, against the statutes of the State prohibiting the formation of pools, trusts, etc.

The seventh paragraph sets out specifically that the purpose of the alleged conspiracy was to procure all of the employees of the appellant and their contracts of insurance, and all of their business, property and good will in order to force appellant out of business; that this was to be done by false and fraudulent representations made concerning the appellant; that they endeavored, by this means, through Smith, to persuade the employees of the mutual company to breach their contracts of employment and to leave the employment of the appellant and enter the employment of the National Insurance Company; that the conspiracy should be continued as long as necessary to accomplish the purpose intended, and that resort should be had "to intimidation, threats, false and slanderous statements, bribery, false and malicious prosecutions, vexatious litigation, confiscation of property, or any other unlawful means necessary to accomplish the destruction of their competitors."

The eighth paragraph alleged that by the "unlawful means aforesaid" the appellant succeeded in procuring the employees of the mutual company, on the morning of January 9, 1911, to enter the employ of appellee.

The ninth paragraph sets forth that the agents of the appellee company, in pursuance of the false and fraudulent representations, induced the policy holders of the mutual company to abandon their policies with that company and to insure in the national company, which was done by false and fraudulent statements, setting them out; that this was done "falsely, designedly and maliciously, for the purpose of executing the unlawful conspiracy."

The tenth and eleventh paragraphs detailed the fur-

ther effor.. of the defendants to destroy the business of the mutual company by interference with its agents and policy holders, causing the policies to lapse in the mutual company and the appellant company.

The twelfth paragraph specifies the amount of damages alleged to have resulted to appellant by reason of the acts of the alleged conspiracy.

The fourteenth and fifteenth paragraphs allege that suits were brought against the mutual company for the dissolution of the same in pursuance of the conspiracy, and that the purpose of the suits was to destroy the mutual company's business by causing the policy holders therein to drop their policies by false and fraudulent statements concerning the solvency of the mutual company, which are set forth; that the false and fraudulent statements made throughout the various districts in which the mutual company was doing business caused a loss to plaintiff of an income from policy holders in the mutual company to the amount of $20,000.

The sixteenth paragraph sets forth the following: "That the defendants during the years 1911 and 1912 have continued, through malice and by means of false and fraudulent promises of compensation and promotion, interfered with the employees of plaintiff, whereby the business of plaintiff was kept deranged; that they have succeeded in securing said employees to leave plaintiff, in breach of contract, and enter the employment of defendants; that they carried to defendants the skill and knowledge of plaintiff's business that they had acquired at plaintiff's expense; that defendants required them to spend their time in harassing, annoying and worrying plaintiff's policy holders, from whom they had formerly collected, and in trying to cause said policy holders to lapse their insurance, all of which was in furtherance of said conspiracy; that because thereof plaintiff has been compelled to employ agents to overcome said wrongs and maintain said insurance, and in defense of its said business has been compelled to spend to its damage the sum

of $5,000; that in numerous instances plaintiff has been unable to satisfy its said policy holders from the aforesaid attacks of defendants whereby the premiums of plaintiff have been greatly reduced, to its damage in the sum of $5,000; that because of said wrong it has been deprived of new business to its damage in the sum of $15,000.''

The seventeenth paragraph sets forth that one Nelson, plaintiff's former superintendent, joined the conspiracy, through appellee's wrong, and brought suit against the appellant in the sum of $50,000; that said suit was brought for the purpose of ''annoying and vexing plaintiff's policy holders and employees, and as a basis for further false and fraudulent representations against plaintiff, to its damage in the sum of $5,000.''

The eighteenth paragraph sets forth certain false and fraudulent representations of Nelson in pursuance of the conspiracy by which appellant alleges that it was brought into disrepute with its policy holders, and as a result caused them to lapse their insurance, to plaintiff's damage in the sum of $7,000.

The nineteenth paragraph sets forth that the good name and reputation of plaintiff had been damaged in the sum of $80,000.

The twentieth paragraph alleges exemplary damages in the sum of $50,000; and the prayer was for judgment for $200,000.

The appellees, defendants below, demurred to the complaint, alleging that the same ''does not state a cause of action.'' The court sustained the demurrer. Appellant refused to plead further, whereupon the court dismissed the complaint, and the cause is here on appeal.

*Miles & Wade,* for appellant.

The wrongs complained of are actionable, and the complaint states a cause of action, because:

1. The purposes of the alleged conspiracy are unlawful. (a) To suppress competition and establish a monopoly is against public policy and contrary to law.

Kirby's Dig., § § 1976 to 1982; 1 Bishop's Crim. Law, § § 518-529; 2 *Id.,* § 230.  (b) It is contrary to law to wilfully interfere with, entice away, employ and induce laborers and employees to breach their contracts of employment.  Kirby's Dig., § 5030.  (c) It is a civil wrong to harass and annoy plaintiff's agents and policy holders, and to injure and destroy its business.  77 N. Y. Supp. 373.

2.  The complaint alleges interference with the contractual relations of appellant with its agents and policy holders.  2 E. & B. 216; Bigelow on Torts, 23, 24; *Id.,* 133-6; 86 Ark. 130; 6 Q. B. Div. 333; 70 N. J. Eq. 541; 76 N. C. 355; 122 Ga. 509; 50 W. Va. 611; 188 Mass. 353; 23 Fla. 206; 90 Me. 166; 77 Md. 396; 101 Ill. App. 355; 177 Mass. 485; 59 W. Va. 253; 43 Ga. 601; 66 N. Y. 82; 2 Wend. 385; 19 *Id.* 305; 5 O. Cir. 40; 12 Mass. 115.

3.  It states a cause of action because of the wrong of appellees in employing the superintendents, agents and other employees of appellant, with their knowledge, skill and influence over its policy holders.  90 Ark. 301; 31 Cyc. 1430; 8 O. Dec., Reprint, 32; 2 Hare, 393; 3 Ch. 462-1892; 38 N. Y. Supp. 487; 2 Q. B. 35-1895; 14 Ch. Div. 596-1880; 15 So. (Ala.) 956; 50 Neb. 248; 19 N. Y. 9; 130 N. Y. 134; 6 N. Y. Supp. 507; 86 Mo. 546; 52 N. W. (Minn.) 131.

4.  Because of the unlawful means employed to injure appellant in its business, in (1) interfering with existing business, 61 Wash. 107, and (2) procuring refusal to make subsequent contracts of employment and insurance.  Bigelow, Torts, 115.

5.  Because of malice of appellees toward appellant as shown in their efforts to destroy it.  The thing done, and all the methods employed to do it, may be lawful, still it may be actionable because of the malicious motive that actuates the doer.

Nothing can justify the malicious interference, annoyance, harassing and worrying of plaintiff's agents and policy holders, alleged in the complaint.  107 Mass.

555; 57 N. E. 1011; 107 Minn. 145; 161 Fed. 219; 9 L. R. A. (N. S.) 904, and note; 118 Ky. 662; 86 Fed. 1017; 26 So. 791; 150 Fed. 419; 29 L. R. A. (N. S.) 869, and note.

6. Because of the number of persons associated together in the conspiracy. The fact that the defendant company conspired with others, and with them formed a conspiracy to do something that it could not do alone, created a cause of action. 159 Pa. St. 420.

*Mehaffy, Reid & Mehaffy, Horace Chamberlin* and *Wallace Townsend,* for appellees.

1. This court did not hold the contract valid in the case of *Freemyer* v. *Industrial Mutual Indemnity Company,* 101 Ark. 61, as is contended by appellant, but specifically reserved decision on the power of a corporation to merge itself into a new company, until that question should properly come before it.

Appellees insist that appellants could not recover under its contract for the damage done the mutual company. All the wrongs alleged are tortious—grow out of libel, slander, malicious prosecution or conspiracy. The right of action, if any, would not survive to a personal representative, and is not assignable. 4 Cyc. 23; Kirby's Dig., § § 6285-6; 41 Ark. 295-298; 54 Ark. 358-361.

2. A cause of action arising out of conspiracy is not assignable. 96 Wis. 10, 70 N. W. 289; 76 Wis. 657, 45 N. W. 667.

WOOD, J., (after stating the facts). The injuries and resultant damage to appellant, by reason of the various wrongful acts of conspiracy set forth in its complaint, down to the sixteenth paragraph thereof, were all wrongs and injuries done to the Mutual Indemnity Company. Appellant contends that it was entitled to recover damages for these alleged injuries by reason of its contract with the Mutual Indemnity Company, whereby, in consideration of the reinsurance by appellant of the mutual company's policies and the assumption by appellant of all its risks and obligations, together with all debts and liabilities of the mutual company, the latter

was to tranfer to appellant "all existing and outstanding contracts of insurance, together with all assets."

The appellant is mistaken in assuming that this court held that this contract was valid as a merger agreement whereby the assets of the mutual company should pass to the appellant company in the case of *Freemyer* v. *Industrial Mutual Indemnity Co.,* 101 Ark. 61. We expressly refrained from deciding that question in the above case, saying, "We do not think the general subject of the power of a corporation of this kind to merge itself into or consolidate with another or organize itself into a new corporation is involved." It was not necessary in that case to determine as to whether a mutual industrial insurance company, under our statute, could, by contract, merge itself and pass all of its assets into another company; nor do we think it necessary to decide that question in this case, for, conceding that the assets of the Industrial Mutual Indemnity Company passed or were assigned by it to the appellant under a valid contract, the alleged injuries set up in appellant's complaint as suffered by the Industrial Mutual Indemnity Company, down to paragraph 16, were not such assets as could be assigned under our statute.

The injuries as alleged to the Industrial Mutual Indemnity Company were all torts in the nature of slander, libel, malicious prosecution, fraudulent conspiracy to injure and destroy business, etc. Actions growing out of wrongs of this nature would not survive, but were peculiar to the Industrial Mutual Indemnity Company and died when it went out of existence. The causes of action that survive are assignable; those that do not survive are not assignable. 4 Cyc. 23. Now the causes of action that survive are those "for wrongs done to the person or property of another." Kirby's Digest, § 6285. The statute means injuries of a physical character to actual, visible and tangible property, and not to property rights or interests which in their nature are invisible and intangible. For example, if one injures another in his reputation or business by libel and slander, these, by the

express terms of the statute (Kirby's Digest, § 6286), do not survive. And the statute, § 6285, *supra*, by analogy has generally been construed not to include injuries or wrongs of a kindred nature, such as malicious prosecution, conspiracies to injure another's business and interests in property, to cheat, defraud, etc., where no visible personal property as such is affected. To illustrate further, where there is an injury by trespass to tangible personal property, same being damaged or destroyed, or where same is converted, or where, through negligence, the visible personal property of another is injured or destroyed, in all such cases the cause of action for damages resulting from such wrongs or injuries survive and are assignable. But injuries that are not of a physical nature, and that do not operate upon or affect tangible personal property, as distinguished from property rights or interests, do not survive, and are not assignable. *Davis* v. *Nichols,* 54 Ark. 358; *John W. Farwell & Co.* v. *Wolf et al.,* 96 Wis. 10, 70 N. W. 289, and cases therein cited. It follows that whatever causes of action the Industrial Mutual Indemnity Company had against appellee, these causes of action (conceding that same were well pleaded) grew out of torts that were not of a physical character and which did not injure the Industrial Mutual Indemnity Company's tangible property. But, on the contrary, the torts, as set forth, were in the nature of conspiracies to injure and destroy the Industrial Mutual Indemnity Company's property rights and interests in business by libel, slander, malicious prosecution, fraudulent representations, and kindred wrongs. Causes of action for these wrongs did not survive, and were not assignable.

The allegations contained in the sixteenth, seventeenth and eighteenth paragraphs of the complaint do not state any cause of action against the appellees. In the sixteenth paragraph, there is a general allegation that "defendants, through malice and by means of false and fraudulent promises of compensation and promotion, had interfered with the employees of plaintiff;" that

"defendants had succeeded in securing said employees to leave plaintiff in breach of contract and enter the employment of defendant." These allegations are not sufficient to state a cause of action against appellees for causing the employees of appellant to violate their contract of employment with it. No specific contract is set up. The names of no employees are mentioned, the means and methods used are not specified. No facts are stated that discover a cause of action. The same may be said as to the allegations concerning policy holders. The seventeenth paragraph alleges that "through defendant's wrongs" Nelson "joined said conspiracy and brought suit against plaintiff in the sum of $50,000." But the "wrongs" alleged are not set forth. The eighteenth paragraph does not state a cause of action against appellees. It charges that "Nelson and other agents began another canvass of plaintiff's policy holders, telling that plaintiff had another big suit against it," etc. If this allegation was intended to state a cause of action for slander of appellant's business or malicious prosecution of appellant in furtherance of a conspiracy, it falls far short of stating it. Such general allegations as contained in the above paragraphs could only be met by general denials, and no issue could be joined by such pleadings.

In testing the sufficiency of a pleading by general demurrer, every reasonable intendment should be indulged to support it. "If the facts stated, together with every reasonable inference therefrom constitute a cause of action, then the demurrer should be overruled." *Cazort & McGehee* v. *Dunbar,* 91 Ark. 400, and cases cited. But the complaint here does not state any facts to show cause of action. Therefore, the complaint can not be amended on motion to make more specific. It is not a statement of a cause of action defectively, but a failure to state a cause of action at all. *Goodwin* v. *Robinson,* 30 Ark. 536.

The judgment sustaining the demurrer and dismissing the complaint is correct, and is therefore affirmed.