Rita Susan PARKERSON, Executrix of
Estate of Carl R. Parkerson,
Deceased, Appellant,

v.

Don CARROUTH and Malone & Hyde,
Inc. of Arkansas, Appellees.

No. 84–1991.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 14, 1985.

Decided Jan. 31, 1986.

Carl A. Crow, Jr., Hot Springs, Ark., for appellant.

Cyril Hollingsworth, Little Rock, Ark., for appellees.

Before ROSS, Circuit Judge, BRIGHT, Senior Circuit Judge, and BOWMAN, Circuit Judge.

BOWMAN, Circuit Judge.

Rita Susan Parkerson, Executrix of the Estate of Carl R. Parkerson, M.D., appeals the District Court's[1] decision that Dr. Parkerson's civil rights action under 42 U.S.C. §§ 1983, 1985 & 1986 did not survive his death during the pendency of the action. We affirm.

## I.

This case arose out of an unsuccessful criminal prosecution charging Dr. Parker-son with violating 21 U.S.C. § 841(a)(1) by distributing scheduled drugs not in the usual course of medical practice and for which there was no legitimate medical need. Even before his acquittal on all counts, Dr. Parkerson filed suit against Don Carrouth, a pharmacist and manager of Consumer's Discount Pharmacy, and Malone & Hyde, Inc., which does business in Garland County, Arkansas as Consumer's Discount Pharmacy. In his complaint, Dr. Parkerson alleged that Carrouth maliciously reported false information about Dr. Parkerson's prescribing practices to the Arkansas State Pharmacy Board and other persons connected with the Arkansas Diversion Investigation Unit; that Carrouth conspired with employees of Malone & Hyde, the Pharmacy Board, the Investigation Unit, and the Federal Drug Enforcement Administration to deprive Dr. Parkerson of his medical license and Controlled Substance Registration Certificate (CS registration) in violation of his rights "as guaranteed under the Civil Rights Act of 1964";[2] and that as a direct result of the alleged conspiracy, he was indicted, arrested, and imprisoned, and was coerced into surrendering his medical license and his CS registration. The complaint states claims for libel, slander, malicious prosecution, and intentional injury to Dr. Parkerson's medical practice, and seeks damages for his claimed monetary loss and for the anxiety and mental anguish he allegedly suffered.

Dr. Parkerson died before the case came to trial. Pursuant to Rule 25(a) of the Federal Rules of Civil Procedure, defendants filed a suggestion of death. Mrs. Parkerson responded and the District Court entered an order substituting her, as executrix of Dr. Parkerson's estate, as plaintiff in her late husband's action. Thereafter, defendants moved to vacate the order granting the substitution and moved to dismiss the action. The court granted those motions and entered judgment dismissing the case on the ground that the

---

1. The Honorable Oren Harris, Senior District Judge for the Western District of Arkansas.

2. It is not apparent from Dr. Parkerson's complaint precisely what section of the Civil Rights Act of 1964 it is that the complaint relies upon.

action did not survive Dr. Parkerson's death. Mrs. Parkerson then moved to alter that judgment and for leave to file a First Amended and Supplemental Complaint, which deleted the libel and slander claims. The District Court denied Mrs. Parkerson's motions, and this appeal ensued.

## II.

■ This case involves the Arkansas survival statute and the Arkansas decisions construing it.[3] Statutes allowing the survival of actions were intended to modify the traditional rule that an injured party's claim was extinguished upon the death of either party. *Robertson v. Wegmann,* 436 U.S. 584, 589, 98 S.Ct. 1991, 1994, 56 L.Ed.2d 554 (1978); *Thompson v. Estate of Petroff,* 319 N.W.2d 400, 402–06 (Minn. 1982); W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts* § 125A (5th ed. 1984) [hereinafter cited as *Prosser and Keeton*]. The origins of this rule are obscure, but may lie in the early common law's lack of any clear distinction between civil and criminal actions for tortious conduct. *Thompson,* 319 N.W.2d at 402; *Prosser and Keeton, supra,* at § 126. *See generally* Note, *Propriety of Expanding Massachusetts Survival Statute to Embrace Intentional Infliction of Emotional Distress,* 4 W. New Eng.L.Rev. 261, 263–66 (1981) (brief discussion of the nonsurvivability of tort actions at common law). In any event, the initial question for our consideration is whether the District Court erred in finding that Arkansas law precludes the survival of this action.

Mrs. Parkerson argues that if this case were presented to the Arkansas Supreme Court, it would allow this action to survive Dr. Parkerson's death. Arkansas law broadly permits actions to survive when they are based on "wrongs done to the person or property of another". Ark.Stat. Ann. § 27–901.[4] However, the statute also recognizes two exceptions to this general rule: "Nothing in the preceding section shall be so construed as to extend its provisions to actions of slander or libel." Ark. Stat.Ann. § 27–902. Mrs. Parkerson contends that the statute plainly includes all claims asserted in the original complaint, except those for libel and slander, and in the First Amended and Supplemental Complaint.

■ The District Court, based on its examination of Arkansas law, held that Dr. Parkerson's action did not survive his death. The able and experienced District Judge's determination of this question of local law is entitled to considerable deference. *See Gary Braswell & Associates v. Piedmont Industries, Inc.,* 773 F.2d 987, 989 n. 3 (8th Cir.1985); *Freeman v. Schmidt Real Estate & Insurance, Inc.,* 755 F.2d 135, 137 (8th Cir.1985). Although we are not bound by the District Court's interpretation of state law and must independently assess the basis for that interpretation, *see Kansas State Bank v. Citizens Bank,* 737 F.2d 1490, 1496 (8th Cir. 1984), our task is "not to adopt the construction we think most reasonable, but simply to review the district court's deter-

---

**3.** It is well established that 42 U.S.C. § 1988 requires courts to apply state law to questions of survival of federal civil rights actions as long as the state law is not inconsistent with the Constitution and laws of the United States. *See Robertson v. Wegmann,* 436 U.S. 584 at 588–90, 98 S.Ct. 1991 at 1994–95, 56 L.Ed.2d 554 at 560–61 (1978); *Moor v. County of Alameda,* 411 U.S. 693, 702 n. 14, 93 S.Ct. 1785, 1792 n. 14, 36 L.Ed.2d 596 (1973).

An exception to this general rule is the provision in 42 U.S.C. § 1986 that permits survival of an action against a person who had the power to prevent or aid in preventing a wrong actionable under the civil rights acts and who neglected or refused to do so. The action survives,

however, only if the victim died as a result of the wrong. In the instant case, this provision does not apply because Mrs. Parkerson makes no claim that her husband died as a result of the wrongs that defendants allegedly committed.

**4.** Section 27–901 provides in full:

For wrongs done to the person or property of another, an action may be maintained against the wrongdoers, and such action may be brought by the person injured, or, after his death, by his executor or administrator against such wrongdoer, or, after his death, against his executor or administrator, in the same manner and with like effect in all respects as actions founded on contracts.

mination ...." *Brown & Root, Inc. v. Hempstead County Sand & Gravel, Inc.,* 767 F.2d 464, 469 (8th Cir.1985).

The District Court relied primarily upon *Arkansas Life Insurance Co. v. American National Life Insurance Co.,* 110 Ark. 130, 161 S.W. 136 (1913), in which the Arkansas Supreme Court considered the survival of an action alleging a conspiracy to destroy a business. The plaintiff had agreed to reinsure the policies of the Industrial Mutual Indemnity Co., and had assumed all the liabilities of Mutual Indemnity, which then ceased to exist. Arguing, in substance, that Mutual Indemnity had assigned to it all of Mutual's causes of action against third parties, the plaintiff brought suit on Mutual's alleged causes of action against the defendants. The Arkansas Supreme Court held that the alleged claims— slander, libel, malicious prosecution, wrongful interference with contracts of employment, and conspiracy to injure and destroy business—did not survive after Mutual Indemnity ceased to exist. The court held that the statutory language providing for the survival of actions "for wrongs done to the person or property of another" means "injuries of a physical character to actual, visible, and tangible property, and not to property rights or interests which in their nature are invisible and intangible." *Id.* 161 S.W. at 138. The court added that Arkansas courts generally had construed the statutory language, which is the same as the statutory language in the present Ark.Stat.Ann. § 27–901, not to include such injuries as malicious prosecution or conspiracies to injure another's business where no tangible personal property is affected. *Id.* The *Arkansas Life* decision thus is strong authority against the survival of the present action, which, stripped of the libel and slander claims that Mrs. Parkerson concedes do not survive, asserts claims for malicious prosecution and intentional injury to Dr. Parkerson's medical practice.

An earlier Arkansas case construing the Arkansas statute governing the survival of actions also supports the District Court's decision. In *Ward v. Blackwood,* 41 Ark. 295 (1883), the Arkansas Supreme Court held that statutory language identical to Ark.Stat.Ann. § 27–901 included only actions involving *"bodily injury,* or damage of a *physical* character, but [did] not extend to torts which do not directly affect the person, but only the feelings or reputation, such as malicious prosecution." 41 Ark. at 298 (emphasis added). In striking the plaintiff's count for malicious prosecution, the court noted that to allow such an action to survive the victim's death would create the need at trial to inquire "into the personal character of a dead man and his innocence or guilt of a criminal offense." *Id.* at 299.

Mrs. Parkerson contends that no issue of character or of guilt or innocence is involved here because a jury acquitted Dr. Parkerson of all the criminal charges that were brought against him. We believe this is too narrow and simplistic a view of the evidence that the parties would elicit at trial. To prevail on the malicious prosecution claim, Mrs. Parkerson must show, among other things, that defendants had no probable cause to believe that Dr. Parkerson had committed or was committing a crime. *See, e.g., Crockett Motor Sales, Inc. v. London,* 283 Ark. 106, 671 S.W.2d 187, 189 (1984). Although Dr. Parkerson was acquitted, the acquittal does not mean that at the time defendants engaged in the acts alleged in his complaint there was not probable cause to believe that Dr. Parkerson had committed a crime. At trial, defendants doubtless would come forward with evidence on the issue of probable cause, as well as on the issue of malice, and much of this evidence likely would go to Dr. Parkerson's character and the nature of his conduct. Thus we believe that the concerns expressed in *Ward* are fully applicable to the present case.

Mrs. Parkerson argues that the Arkansas Supreme Court would change its construction of the statute in light of modern trends. We must reject this argument because she does not direct our attention to any case, and we are not aware of any, in which the Arkansas Supreme Court has

overruled, reached a result inconsistent with, or even questioned the holdings of *Ward* or *Arkansas Life*. To the contrary, the court cited *Arkansas Life* approvingly in *Mason v. Funderburk*, 247 Ark. 521, 446 S.W.2d 543, 548 (1969) (stating that *Arkansas Life* recognized the tort of wrongful interference with a contract of employment when *Arkansas Life* held that a claim based thereon does not survive the injured party's death and is not assignable).

▉ Finding Mrs. Parkerson's arguments unpersuasive, we see no reason why we should not defer to the District Court's ruling on the point of Arkansas law in question. Indeed, in view of the Arkansas decisions discussed above, we believe it would be difficult to reach any conclusion other than the one the District Court reached, *i.e.*, that Dr. Parkerson's action did not survive his death.

### III.

Mrs. Parkerson contends that if Arkansas law bars the survival of this action, and we hold that it does, then Arkansas law is inconsistent with the federal civil rights laws. Her arguments are directed primarily toward distinguishing the facts of *Robertson v. Wegmann*, 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978), from those of the instant case. In *Robertson*, the Supreme Court rejected the argument that the Louisiana rule permitting malicious prosecution actions to survive only in favor of certain surviving family members is inconsistent with the federal civil rights laws. While recognizing that courts must analyze the effect of a state law in terms of its consistency or inconsistency with the federal policy underlying the civil rights cause of action, the Supreme Court concluded that the availability of a federal remedy

does not mean that a § 1983 plaintiff (or his representative) must be allowed to continue an action in disregard of the state law to which § 1988 refers us. A state statute cannot be considered "inconsistent" with federal law merely because the statute causes the plaintiff to lose the litigation. If the success of the

§ 1983 action were the only benchmark, there would be no reason at all to look to state law, for the appropriate rule would then always be the one favoring the plaintiff, and its source would be essentially irrelevant. But § 1988 quite clearly instructs us to refer to state statutes; it does not say that state law is to be accepted or rejected based solely on which side is advantaged thereby.

*Id.* at 593, 98 S.Ct. at 1996.

Mrs. Parkerson points out that the Louisiana statute at issue in *Robertson* is more hospitable to survival of claims after a plaintiff's death than is the Arkansas law in the present case. In Louisiana, for example, actions for defamation and malicious prosecution survive the deaths of plaintiffs who are survived by one or more close family members. The Court in *Robertson* noted that the decedent had not left any family who could benefit from the section 1983 goal of compensating injured persons. Mrs. Parkerson correctly notes that Dr. Parkerson left family members who could benefit from an award of damages. Finally, she argues that this case exceeds the bounds delineated in *Robertson*, where the Court noted that "[a] different situation might well be presented ... if state law ... significantly restricted the types of actions that survive." *Id.* at 594, 98 S.Ct. at 1997.

We find these arguments unpersuasive in light of the analytical approach announced in *Robertson*, which we read as requiring, in keeping with section 1988, that we test state law by looking to the policy underlying the federal civil rights laws. *Robertson* does not require courts to compare the laws of one state with those of another state, or to ask whether someone could benefit from survival of the action, or to use some as yet undefined measure to determine whether a state rule on the survival of actions is overly restrictive. Rather, the question to be answered is whether the state law that mandates the nonsurvival of the action is inconsistent with the purposes of the federal civil rights laws. Having considered that question, we

are unable to conclude that the Arkansas survival law fails the *Robertson* test.

We note that the Supreme Court has stated that the federal civil rights laws have four basic purposes: (1) to override state laws fostering discrimination, (2) to provide a remedy where state law is inadequate, (3) to provide a remedy where state law is adequate in theory but unavailable in practice, and (4) to provide a remedy in federal courts supplementary to any available state remedy. *See Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), *overruled in part on other grounds, Monell v. Department of Social Services,* 436 U.S. 658, 673–74, 683, 98 S.Ct. 2018, 2026–27, 2032, 56 L.Ed.2d 611 (1978); *McNeese v. Board of Education,* 373 U.S. 668, 671–72, 83 S.Ct. 1433, 1435–36, 10 L.Ed.2d 622 (1963). In *Robertson,* the Supreme Court added that the policies underlying section 1983 include compensating those injured by deprivation of federally protected rights and deterring the intentional infliction of such injuries. The Court summarized the *Monroe v. Pape* purposes as designed to prevent those acting under color of state law from abusing their power. 436 U.S. at 590–91, 98 S.Ct. at 1995–96.

Although in *Robertson* the Supreme Court did not specifically address the purposes of the federal civil rights laws as announced in *Monroe,* we think that such a review is appropriate in this case to show that the Arkansas law at issue in the present case is not inconsistent with those purposes. The first purpose enumerated in *Monroe* is easily dismissed as inapplicable here: Mrs. Parkerson does not contend that the Arkansas survival law fosters discrimination. The remaining three *Monroe* purposes, however, must be considered. Essentially, these three purposes focus on the adequacy of state remedies for wrongs that also are federal civil rights violations and on the federal interest in assuring a remedy for the violation of a federally protected right. Since Arkansas law provided a remedy to Dr. Parkerson for all the wrongs alleged in his complaint, we fail to see that the *Monroe* purposes have not

been fulfilled. He could have brought his lawsuit in state court as a garden-variety tort claim. In that sense, even as to him the available (and chosen) alternative of a civil rights action is a redundancy, albeit an attractive one because of the provision for attorney's fees under 42 U.S.C. § 1988. Mrs. Parkerson was not the object of defendants' allegedly wrongful activities and would not have had standing to bring in her own name the action brought by Dr. Parkerson. That Arkansas law restricts standing to maintain a malicious prosecution suit so that the death of the injured party abates his action does not mean that the Arkansas remedy is inadequate or unavailable in practice. What is at issue here is not the adequacy of the remedy that Arkansas law afforded Dr. Parkerson, but whether his cause of action survived his death. We believe that the latter question is far-removed from the fundamental concerns expressed in *Monroe v. Pape* that underlie and animate the civil rights laws.

In *Robertson,* the Supreme Court focused on the deterrence aspect of the federal civil rights laws and on the goal of compensating victims of civil rights violations. The Court noted that actions under the federal civil rights laws have an important role in deterring intentional wrongdoing. 436 U.S. at 592, 98 S.Ct. at 1996. The Supreme Court reasoned that "the fact that a particular action might abate surely would not adversely affect § 1983's role in preventing official illegality, at least in situations in which there is no claim that the illegality caused the plaintiff's death." *Id.* Accordingly, the deterrence rationale does not necessarily imply a need for an absolute or broad rule of survival. In cases like the present one, in which the alleged civil rights violations were not committed for the purpose of inflicting physical injury, we do not believe that the possibility that injured parties will die and their actions abate is likely to give any encouragement to potential wrongdoers. After all, those who libel, slander, or maliciously prosecute others, or who participate in any activity that would injure the reputation, psyche, profession, or business of another rather

than cause bodily injury, have no means of knowing their victim will die during the pendency of the victim's action for redress of those wrongs. Thus, we see in the Arkansas survival law no impairment of the deterrent purpose of the federal civil rights laws.

As to the compensatory purpose of the federal civil rights laws, the Court observed in *Robertson* that the section 1983 goal of compensating the injured "provides no basis for requiring compensation of one who is merely suing as the executor of the deceased's estate." *Id.* at 592, 98 S.Ct. at 1996 (footnote omitted). Mrs. Parkerson is not suing for injuries that she derivatively suffered when defendants allegedly violated her husband's civil rights. She is suing merely as executrix of her husband's estate, and thus for this Court to override Arkansas law by mandating the survival of this action would not further the section 1983 goal of compensating those injured by civil rights violations.

The Court concluded in *Robertson* that it could find nothing in section 1983 "or its underlying policies to indicate that a state law causing abatement of a particular action should invariably be ignored in favor of a rule of absolute survivorship." *Id.* at 590, 98 S.Ct. at 1995. The Court reasoned that Congress enacted 42 U.S.C. § 1988 knowing that variances in state law would create disparities in the remedies available to plaintiffs:

> [W]hatever the value of nationwide uniformity in areas of civil rights enforcement where Congress has not spoken, in the areas to which § 1988 is applicable Congress has provided direction, indicating that state law will often provide the content of the federal remedial rule. This statutory reliance on state law obviously means that there will not be nationwide uniformity on these issues.

436 U.S. at 594 n. 11, 98 S.Ct. at 1997 n. 11. Accordingly, we find Mrs. Parkerson's arguments based on the survival of malicious prosecution actions under other states' laws to be without merit.

■ Mrs. Parkerson does not assert a constitutional basis for her attack upon the Arkansas survival law, and absent an infirmity of constitutional dimensions in that law, it is not for a federal court to say that a rule established for Arkansas by its lawmakers is unreasonable or unwise. We recognize that state lawmakers may perceive the existence of sound reasons for abating certain kinds of claims upon the death of the party allegedly injured. These reasons may include the difficulties of proof in certain cases where the decedent's actions or intentions are a critical factor, *see Thompson*, 319 N.W.2d at 404–05, and also the unseemliness of litigation concerning, as here, the honesty and reputation of a person who, being deceased, cannot take part in the trial of the lawsuit. Another plausible justification is to prevent the victim's heirs from receiving an undeserved windfall. *Prosser and Keeton, supra*, at § 126.

■ We conclude that the Arkansas law of survival is not inconsistent with the federal civil rights laws and we affirm the judgment of the District Court.