Opinion issued July 1, 2021



In The

# Court of Appeals

### For The

## First District of Texas

————————————

### NO. 01-19-00866-CV

————————————

## LATRICHA SMITH AND BRYAN JAMES SMITH, Appellants

## V.

## BAILEY HAMMONDS, Appellee

---

### On Appeal from the 239th District Court
### Brazoria County, Texas
### Trial Court Case No. 103835-CV

---

### MEMORANDUM OPINION

Latricha and Bryan James Smith appeal the denial of their motion to dismiss

a malicious-prosecution lawsuit filed against them by Bryan's ex-wife, Bailey

Hammonds. In three issues, the Smiths contend that (1) the reporting of a crime to

police is an activity covered by the Texas Citizens Participation Act ("TCPA"),[1] (2) Hammonds did not establish a prima facia case on each element of her malicious-prosecution claim, and (3) the case should be remanded to award them attorney's fees and costs.  We affirm.

## I. BACKGROUND

### A. The Parties' History

The evidence presented in the light most favorable to Hammonds[2] shows the following. Bryan Smith and Bailey Hammonds are divorced and share custody of their minor son. The divorce was "messy" and the relationship between the parties has been acrimonious ever since. Bryan Smith is now married to Latricha Smith.

Hammonds's affidavit in support of her petition describes two events that occurred before the events giving rise to this lawsuit that exemplify their toxic relationship.

> During my divorce with Bryan Smith, on or about September of 2012, while at work, my Father called me to say Bryan and his girlfriend and other individuals were taking items out of my house. When I pulled into the driveway and walked inside, he had a DVD player or

---

[1] The TCPA was amended with an effective date of September 1, 2019. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 1–12 (codified at TEX. CIV. PRAC. & REM. CODE §§ 27.001–.010). Because this lawsuit was filed on July 22, 2019, it is governed by the pre-amendment version of the TCPA, and our citations refer to that version.

[2] *See Heiber v. Percheron Holdings, LLC*, 591 S.W.3d 208, 211 (Tex. App.—Houston [14th Dist.] 2019, pet. denied).

DIRECTV box in his hand. We argued that he couldn't take stuff. I went to grab the box out of his hand and told him to leave, and he proceeded to drop the box and exclaim, "Oh! That was assault on a police officer!" He looked at his friend, who was an off-duty officer, and said again, "That was an assault, WASN'T IT?" To which the off-duty officer replied, "Yes. I saw it." I was called into the police department by a SGT who told me that he advised Bryan that this wasn't a smart move, and everything was dropped immediately.

In October of 2012, I received a phone call from his girlfriend at the time to say he is extremely upset and headed my way and I need to leave. I proceeded to walk out to my car, when Bryan pulls up in his truck, with bottle of whiskey and officer issued pistol in hand. He yelled that he wasn't going to pay much in child support, and I wasn't going to ruin his life, and then threatened me by screaming "I'm going to kill you - and then I'm going to kill myself." Officers showed up, his parents showed up, and I stayed inside for the rest of the time. This incident immediately followed from our court hearing that set child support.

* * * *

His child support was increased on or about June of 2018, and ever since then, the problems have only intensified once again. When he learned of our [son's] orthodontist appointment, he proceeded to order me to stop scheduling [our son's] appointments on days that he is supposed to have him, and that he is cancelling the dental appointment for December 20th because it is HIS time with him.

Bryan Smith believes I am taking time away from him from [our son], and together combined with his anger of child support being increased, continued with the following acts of obtaining false charges upon me, eventually leading to my arrest of a crime that I never committed.

Hammonds's petition then alleges the two specific incidents that gave rise to her lawsuit against the Smith's for malicious prosecution.

3

### B. The Incident at the Orthodontist

Hammonds's affidavit describes an incident at her son's orthodontist's office, for which she received a citation for leaving a child in a car unattended.

> On December 20th, 2018, a criminal prosecution was commenced against me in the form of a citation for leaving a child unattended in a vehicle. I set said charge for trial, and it was ultimately dismissed on the State's own motion. In this charge, the Defendants themselves initiated the above prosecution, in that Latricha Smith was in the parking lot of the Orthodontist that I was at, watching me as I went in. I believe she communicated with Bryan about me going in, to which Bryan Smith calls the Lake Jackson Police Department about me leaving a child in a vehicle, even though I regularly came outside to check on them, never leaving them alone for more than 5 minutes at a time. The Officers that arrived were not in the area for more than 60 seconds before I came back outside once again. The Officer went to her vehicle after I discussed with her what was going on, and she checked the statute, and then gave me a citation. The charge was dismissed on the State's own motion on May 7th, 2019. I was innocent of the charge placed against me, in that I did not intentionally or knowingly leave a child in a motor vehicle for longer than five minutes, knowing that the child is: younger than seven years of age; and not attended by an individual in the vehicle who is 14 years of age or older. Additionally[,] the [] Clerk of the Orthodontist's Office, Haley Tyler, recalls seeing me exit and reenter the building numerous times to check on my children. Bryan Smith was nowhere to be seen[] and was not at the orthodontist's office at any time during my exiting and re-entering the orthodontist's office numerous times. I saw Latricha Smith each time I walked out. For this case, I had to hire an attorney, Tyson R. Phillips, for $750, to defend me.

### C. The Flower-Picking Incident

Hammonds's affidavit also describes an incident when her child picked flowers from the Smiths' yard, for which she was arrested and charged with criminal mischief.

4

On or about April 5th, 2019, I was arrested for the criminal charge of criminal mischief[] and was told I had a warrant for my arrest. I was placed in jail[] and had a bond in the amount of $1500 issued. I had to hire an attorney to defend me for this, of Tyson R. Phillips and Jimmy Phillips, Jr., to the amount of $5000, and the case was ultimately dismissed on June 28th, 2019, by Judge Sherry Kersh, by the State's own Motion to Dismiss. I was innocent of the charge placed upon me, in that I did not, on or about the 28th of March, 2019, intentionally or knowingly damage or destroy tangible property, namely, Latricha Smith, or any property owned by Latricha Smith, with or without the effective consent of Latricha Smith, the owner of said property, of which the pecuniary loss of said property was alleged to be at least $100 but less than $750 dollars. When I inquired into what it related to, I was told it was in relation to my picking up my child for baseball practice on March 28th, 2019. Our modification order gives me the right to pick up [my son] for his baseball activity when Bryan Smith is unable to or otherwise refuses to. He had told me in effect that he wouldn't be taking [my son] to his baseball activity, and so I showed up as I regularly and normally do to take him to his baseball activity. When I arrived, I saw Latricha Smith and [my son] outside, to which Latricha immediately shooed [my son] inside the house. After a few minutes, one of the children told me he wanted to play on the trampoline, to which I saw [my son] in the backyard jumping on the trampoline. When walking up to the door, my child handed me a flower, to which I told him, "Thank you. Don't pick their flowers. I did not bang on the door. I did not yell during my time there. I was not aggressive in any way towards any individual at the location. I did not tell my children to pick flowers or destroy their flowerbed. I merely came to exercise the right to take my child to his baseball activity just as I regularly do. Officer Stackhouse, who I asked about what happened on the body-cam video of the incident, told me that Bryan Smith was at the scene, told the officer that he was an ex-cop, told the officer he knew the law, and that it looked like Bryan Smith bullied the somewhat new responding officer into filing a charge, to which the responding officer was reluctant to file.

I have learned that statements have been made about me, to which they are not true. I never harassed Latricha Smith. I did not have my kids destroy her flowerbed. I did not commit criminal mischief. I did not leave my children unattended in a vehicle for more than 5 minutes

at a time, I am not court ordered to pick up my child 30 minutes before [his] baseball practice. I did not tell my children something and have them walk over to the flower bed and pull off all the flowers. I did not yell at Latricha Smith. I do not have a history of aggressive behavior towards Latricha Smith or Bryan Smith. I did not yell and pound on the door, and I am not court-ordered to contact Bryan Smith to ask for permission to get my child for baseball practice before getting my child for baseball practice. I am a mother who follows the orders of the Court, and have never been held in contempt of violating such orders.

## D. The Malicious-Prosecution Lawsuit

In July 2019, Hammonds sued the Smiths alleging malicious prosecution. Her live petition asserts that the Smiths maliciously and without probable cause had charges brought against her as a result of the two incidents detailed above, and that both charges were ultimately dismissed in her favor. Hammonds alleged that she "has suffered pecuniary injury, including to [her] reputation, personal humiliation, and mental anguish and suffering." She also requested a jury trial on her claims.

## E. The Motion to Dismiss

The Smiths filed a motion under section 27.003 of the TCPA, asserting that Hammonds's malicious-prosecution claims should be dismissed because they implicated the Smiths' right to petition. After a hearing on the same, the trial court denied the Smiths' motion to dismiss. This interlocutory appeal followed.[3]

---

[3]     *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(12) (authorizing interlocutory appeal from order denying motion to dismiss brought under TCPA).

## II. DENIAL OF TCPA MOTION TO DISMISS

In three issues, the Smiths contend the trial court erred by denying their motion to dismiss, arguing that the TCPA applies to Hammonds's malicious-prosecution claims, that Hammonds did not establish a prima facia case on each element of her malicious-prosecution claims, and that they, the Smiths, are entitled to recover their attorney's fees and costs.

### A. Applicable Law and Standard of Review

The purpose of the TCPA is to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE § 27.002. The TCPA provides a mechanism for early dismissal of a cause of action that "is based on, relates to, or is in response to a party's exercise of the right of free speech, the right to petition, or right of association . . . ." *Id.* § 27.003.

The party moving for dismissal has the initial burden to establish by a preponderance of the evidence "that the legal action is based on, relates to, or is in response to the party's exercise of . . . the right to petition." *Id.* § 27.005(b)(1)(B). If the movant makes this showing, the burden shifts to the nonmovant to establish by "clear and specific evidence a prima facie case for each essential element of the

claim in question." *Id.* § 27.005(c). However, even if the nonmovant makes this showing, the trial court must dismiss the cause of action if the movant "establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." *Id.* § 27.005(d).

When determining whether to dismiss the legal action, the court must consider "the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id.* § 27.006(a). "Under [s]ection 27.006 of the Act, the trial court may consider pleadings as evidence." *Serafine v. Blunt*, 466 S.W.3d 352, 360 (Tex. App.—Austin 2015, no pet.). We review the evidence in the light most favorable to the nonmovant. *Heiber v. Percheron Holdings, LLC*, 591 S.W.3d 208, 211 (Tex. App.—Houston [14th Dist.] 2019, pet. denied).

The Supreme Court has noted that "[c]lear and specific evidence is not a recognized evidentiary standard[ ]" and "[a]lthough it sounds similar to clear and convincing evidence, the phrases are not legally synonymous." *In re Lipsky*, 460 S.W.3d 579, 589 (Tex. 2015). "Clear" means "unambiguous, sure or free from doubt," and "specific" means "explicit or relating to a particular named thing." *Id.* at 590.

In addition, the Supreme Court noted that the term "prima facie case" means "evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *Id.* at 590. The "clear and specific evidence" requirement does

not impose an elevated evidentiary standard, nor does it categorically reject circumstantial evidence. *Id.* at 591. But, it requires more than mere notice pleading. *Id.* at 590–91. Instead, a plaintiff must provide enough detail to show the factual basis for their claim.[4] *Id.* at 590.

We consider de novo the legal question of whether the movant has established that the challenged legal action is covered by the TCPA. *Serafine*, 466 S.W.3d at 357. We also review de novo a trial court's determination of whether a nonmovant has presented clear and specific evidence establishing a prima facie case of each essential element of the challenged claims. *Id.*

## B. Applicability of the TCPA

In their first issue, the Smiths argue that "the reporting of a crime to police is covered by the TCPA." We agree. The TCPA defines the exercise of the right of free speech as "a communication made in connection with a matter of public

---

[4] In their appellate brief, the Smiths refer to, but do not cite to, a federal district court case which holds that, "in regard to malicious prosecution under the TCPA, the principal difference between a prima facie case established by **clear and specific** evidence compared to the typical prima facia case is that tclear and specific evidence must be made *without the benefit of rational inferences* drawn from the evidence presented." Presumably, this statement from appellants' brief is a reference to *Charalambopoulos v. Grammar*, No. 3:14-CV-2424-D, 2015 WL 390664, at *15 (W.D. Tex. Jan. 29, 2015), a case in which the federal district court made an "*Erie*-guess" that "a prima facie case established by clear and specific evidence must be made without the benefit of rational inferences drawn from the evidence presented." This "*Erie*-guess" proved to be incorrect. *See Lipsky*, 460 S.W.3d at 591 ("We accordingly disapprove those cases that interpret the TCPA to require direct evidence of each essential element of the underlying claim to avoid dismissal").

concern." TEX. CIV. PRAC. & REM. CODE § 27.001(3). A matter of public concern includes, among other things, "an issue related to . . . health or safety," or "environmental, economic, or community well-being." *Id.* § 27.001(7). Reporting a crime to law enforcement and related judicial proceedings arising from prosecutions are matters of public concern. *Brady v. Klentzman*, 515 S.W.3d 878, 884 (Tex. 2017); *Robert B. James, DDS, Inc. v. Elkins*, 553 S.W.3d 596, 609 (Tex. App.—San Antonio 2018, pet. denied) (holding court agreed statements to police, even if false, were exercise of right of petition, a First Amendment right listed in the TCPA); *Fishman v. C.O.D. Capital Corp.*, No. 05-16-00581-CV, 2017 WL 3033314, at *6 (Tex. App.—Dallas July 18, 2017, no pet.) (mem. op.); *see Murphy USA, Inc. v. Rose*, No. 12-15-00197-CV, 2016 WL 5800263, at *3-*4 (Tex. App.—Tyler Oct. 5, 2016, no pet.) (mem. op.) (holding that TCPA protected criminal activity report even though charges were dropped).

Having determined that the Smiths' statements to police were communications covered by the TCPA, we turn to their remaining issues.

## C. Prima Facia Case

In their second issue, the Smiths contend that Hammonds has not presented clear and specific evidence to support a prima facie case for each essential element of her malicious-prosecution claims. To prove a civil claim for malicious prosecution, a plaintiff must establish: (1) the commencement of a criminal

prosecution against him; (2) initiation or procurement of the action by the defendant; (3) termination of the prosecution in his favor; (4) the plaintiff's innocence; (5) the absence of probable cause; (6) malice in filing the charge; and (7) damages. *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 792 n.3 (Tex. 2006). The elements concerning probable cause and malice guard against the inclination to punish those who, through error but not malevolence, initiate criminal proceedings against a person who is exonerated. *Id.* at 792. The probable cause element asks whether a reasonable person would believe that a crime had been committed given the facts as the complainant honestly and reasonably believed them to be before the criminal proceedings were initiated. *Id.*

### 1. *Prima Facie Case Regarding the Incident at the Orthodontist's Office*

Regarding this incident, the Smiths challenge two elements of Hammonds's malicious-prosecution cause of action. First, the Smiths contend that, because they did not give false information to the police, there is no evidence of element 2; i.e., there is no evidence that they initiated a criminal prosecution against Hammonds. Second, the Smiths contend that there is no evidence of element 5; i.e., there is no evidence of the absence of probable cause. We address each argument, respectively.

*a. Initiation or procurement of a criminal prosecution*

The Smiths argue that Hammonds's *belief* that Bryan Smith called the Lake Jackson Police Department to report the unattended children in the car is not based on direct evidence, and thus is not "clear and specific" for purposes of a TCPA case. However, as noted above, the Supreme Court has disapproved cases requiring direct evidence and held that circumstantial evidence will suffice. *See Lipsky*, 460 S.W.3d at 591 ("We accordingly disapprove those cases that interpret the TCPA to require direct evidence of each essential element of the underlying claim to avoid dismissal"). Here, Hammonds presented circumstantial evidence to support her assertion that Bryan Smith called the Lake Jackson Police Department. Specifically, she alleged that Latricha Smith "was present and parked in the vicinity [of the orthodontist office]" shortly before the call to police was made. Given the parties' acrimonious history and that Latricha Smith was parked nearby, it could be rationally deduced that Bryan Smith, after a discussion with Latricha about what she saw, reported the incident to police.

The Smiths also argue that, even if they reported the incident, the report was technically true[5] and they cannot have *caused* the initiation of the prosecution

---

[5] The phone call correctly informed the police that there were "2 children left inside a white suburban at an orthopedic office at the related location, and that the children were under the age of seven, and that nobody over 14 was in the vehicle." This information includes all of the elements of the crime of leaving a child in a vehicle, except that it omits any reference to the requirement that the child be left

because that was decided by the responding police officer's discretion alone. The Texas Supreme Court provided guidance on this issue in *Browning-Ferris Industries, Inc. v. Lieck*, 881 S.W.2d 288 (Tex. 1994). In *Lieck*, the appellant argued that "a person who cooperates with law enforcement authorities by providing them information should not be liable for malicious prosecution unless he knows the information to be false." *Id.* at 293. The court rejected this bright-line rule, holding instead that "a person may be liable, not only when he gives information he knows is false to a prosecutor, but also when his conduct is the determining factor in the prosecutor's decision to prosecute." *Id.* at 294. In a later case, the Supreme Court explained that "failing to fully and fairly disclose all material information and knowingly providing false information to the prosecutor are relevant to the malice and causation elements of a prosecution claim[.]" *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 519 (Tex. 1997).

Here, Hammonds alleged that the Smiths failed to fully and fairly disclose all material information to the police that responded to the call at the orthodontist office. Specifically, Hammonds's petition states:

> Further, Defendant Bryan Smith did not make a full and fair disclosure to the Lake Jackson Police Department of material facts regarding the allegation made, omitting that [Hammonds] was regularly checking the children in the vehicle, never leaving them unattended for more than 5 minutes, and said information, if not

> in the vehicle longer than five minutes. *See* TEX. PENAL CODE § 22.10. The phone call did not mention the parties' relationship.

13

withheld, would have been a material factor in the officer's decision to prosecute and issue a citation to [Hammonds], because such a fact would have made the Officer aware that there was no violation of the statute.

Other relevant information omitted from the report to the police, which could have affected the officer's decision to issue the citation, were the facts that Latricha Smith was the witness, Bryan Smith was the caller, and the alleged perpetrator of the crime was not some unknown person, but was, in fact, Bryan Smith's ex-wife. Thus, there was evidence that the Smiths caused the initiation of the prosecution by failing to fully and fairly disclose all material facts to the responding officer.[6]

### b. Absence of Probable Cause

The Smiths also attack element 5 of a malicious-prosecution action, asserting that Hammonds presented no evidence of an absence of probable cause. In this issue, the Smiths again argue that "because the officer exercised her discretion to cite Ms. Hammonds, the Smiths did not cause the commencement of a criminal prosecution." However, this is "relevant to the malice and causation

---

[6] The Smiths contend for the first time in their reply brief that Hammonds presented no evidence of malice. However, we note that the evidence presented by Hammonds to support causation also supports malice. *See Richey*, 952 S.W.2d at 529 ("failing to fully and fairly disclose all material information and knowingly providing false information to the prosecutor are relevant to the malice and causation elements of a prosecution claim").

elements of a malicious prosecution claim but ha[s] no bearing on probable cause." *See Richey*, 952 S.W.2d at 519.

The Smiths also assert that they, as private citizens making a police report, had no duty to investigate how long Hammonds left the children in the car, that all other elements of section 22.10 of the Penal Code were met, and that they had a duty, as citizens, to report suspected child endangerment. As such, the Smiths contend that they acted in good faith upon probable cause.

The probable-cause element asks whether a reasonable person would believe that a crime had been committed given the facts as the complainant honestly and reasonably believed them to be before the criminal proceedings were initiated. *Richey*, 952 S.W.2d at 517. In malicious prosecution claims, there is a presumption that the defendant acted in good faith in reporting an apparent subversion of the law. *S. Tex. Freightliner, Inc. v. Muniz*, 288 S.W.3d 123, 133–34 (Tex. App.—Corpus Christi–Edinburg 2009, pet. denied) (citing *Kroger*, 216 S.W.3d at 794). The plaintiff bears the burden to rebut this presumption "by producing evidence that the defendant initiated a prosecution on the basis of information or motives that do not support a reasonable belief that the claimant was guilty of the charged crime." *Id.* "Evidence of motives that undermine the presumption of reasonable belief include prior bad relations, preexisting debt, racial animus, or any private motivation to harm." *Id.* at 134; *see also Suberu*, 216 S.W.3d at 795 (holding

15

probable cause presumed because plaintiff "introduced no evidence of, for example, prior bad relations, preexisting debt, racial animus, or any private motivation to harm her").

Hammonds's petition and supporting affidavit show a long history of "prior bad relations" between the Smiths and herself. In her petition, Hammonds asserts:

> [The Smiths] have continuing and bad relations with [Hammonds]. Defendant Bryan Smith has previously driven over to Plaintiff's house during the divorce, threatening to shoot her and himself. Further, Defendant Bryan Smith has used his position as an officer in attempting to file a false charge of assault on a police officer during their divorce.
>
> Defendant Bryan Smith has been extremely aggressive ever since his child support was increased in late 2018. After his child support was increased, any responsible relationship between the unmarried parents of their child is completely unmanageable and has deteriorated almost completely.
>
> Defendant Bryan Smith refuses to go to any counseling. Bryan Smith refuses to take [Hammonds's] and Bryan Smith's child to his extracurricular activity. He has blocked [Hammonds's] number from their child's phone.

In her affidavit, Hammonds asserted:

> My divorce with Bryan Smith was messy, and he has harbored ill-will and ill-feelings towards me ever since. To give a history of his continuing and patterned behavior, it is necessary to understand the lengths he will go to in abusing his position [as a police officer] and the acts he does to attempt to control the individuals in his life.
>
> [Hammonds provides several examples of conflicts she alleges were initiated by Mr. Smith]

16

Bryan Smith believes I am taking time away from him [and their child], and together combined with his anger of child support being increased, continued with the following acts of obtaining false charges upon me, eventually leading to my arrest of a crime that I never committed.

Based on this evidence, we conclude that Hammonds has presented evidence of the parties' "prior bad relations" and the Smiths' "private motivation to harm her" and that, as a result, the Smiths did not act in good faith and did not reasonably believe that Hammonds had committed a crime when reporting the incident at the orthodontist's office. *See Suberu*, 216 S.W.3d at 795.

### 2. The Flower-Picking Incident

Regarding this incident, the Smiths challenge two elements of Hammond's malicious-prosecution cause of action. First, the Smiths again contend that because "the decision to prosecute was left to the discretion of individuals other than the Smiths," there is no evidence of element 2; i.e., there is no evidence that they initiated or procured a criminal prosecution against Hammonds. Second, the Smiths contend there is no evidence of element 3; i.e., that the prosecution was terminated in Hammonds's favor. Finally, the Smiths contend there is no evidence of element 5; i.e., that Hammonds did not present evidence that the Smiths lacked probable cause in initiating or procuring the criminal-mischief prosecution against Hammonds. Again, we address each argument, respectively.

17

*a. Initiation or procurement of a criminal prosecution*

The Smiths argue that Hammonds presented no evidence that they initiated or procured the criminal-mischief prosecution against Hammonds. Regarding the procurement element of malicious prosecution, the Texas Supreme Court has noted:

> When a private person gives to a prosecuting officer information that he believes to be true, and the officer in the exercise of his uncontrolled discretion initiates criminal proceedings based upon that information, the informer is not liable under the rule stated in [§ 653] even though the information proves to be false and his belief was one that a reasonable man would not entertain. The exercise of the officer's discretion makes the initiation of the prosecution his own and protects from liability the person whose information or accusation has led the officer to initiate the proceedings.
>
> If, however, the information is known by the giver to be false, an intelligent exercise of the officer's discretion becomes impossible, and a prosecution based upon it is procured by the person giving the false information.

*Lieck*, 881 S.W.2d at 293–94 (quoting RESTATEMENT (SECOND) OF TORTS, § 653, Comment g).

> Here, Hammonds produced the following evidence in her pleading:
>
> Defendant Bryan Smith further procured the prosecution when he told the Brazoria County Sheriff's Office false information, including that [Hammonds] was harassing his wife, and had her kids destroy the flowerbeds. Further, Bryan Smith also procured the prosecution of criminal mischief when the Responding Officer was reluctant to file any charged, but Bryan Smith repeatedly told him that he was a[n] ex[-]cop [sic], and "he knows the law." Further, Bryan Smith attempted to bully the relatively new responding officer with

18

intimidation of his extensive expertise and knowledge, and of what crime [Hammonds] should be charged with.

Defendant Latricha Smith initiated the prosecution by her formal charge of making a sworn false report, and both Defendants actions being necessary and sufficient cause of the criminal prosecution.

In her own affidavit, which was attached to her petition, Hammonds stated, "I did not have my kids destroy [the Smiths'] flowerbed," and asserted that the Smiths brought "false criminal charges" against her. Because Hammonds asserted that the information the Smiths provided to the police was untrue, she has presented evidence that they procured a criminal prosecution against her. In such a case, the decision to arrest her would be based on the false information, not the officer's discretion.[7]

### b. Termination of the Prosecution in Hammonds's Favor

The Smiths also argue that "a criminal prosecution that is dismissed does not warrant a malicious prosecution action" because it is not a termination in the plaintiff's favor. In support, the Smiths cite several cases holding that an acquittal or dismissal are not evidence of a lack of *probable cause*.[8] While these cases may

---

[7] Again, to the extent that the Smiths are complaining for the first time in their reply brief about Hammonds's failure to show malice, we note that the same evidence admitted to show causation supports the malice issue. *See Richey*, 952 S.W.2d at 519 ("failing to fully and fairly disclose all material information and knowingly providing false information to the prosecutor are relevant to the malice and causation elements of a prosecution claim").

[8] *See Fisher v. Beach*, 671 S.W.2d 63, 66 (Tex. App.—Dallas 1984, no writ); *Parker v. Dallas Hunting & Fishing Club*, 463 S.W.2d 496, 500 (Tex. Civ.

19

be relevant to the lack-of-probable-cause element of malicious prosecution, they do not address the termination-of-the-prosecution-in-plaintiff's-favor element of malicious prosecution.

For purposes of malicious-prosecution cases, and with exceptions not applicable here, criminal cases are terminated in favor of the accused by: (1) a discharge by a magistrate at a preliminary hearing; (2) the refusal of a grand jury to indict; (3) the formal abandonment of the proceedings by the public prosecutor; or (4) the quashing of an indictment or information; (5) an acquittal; or (f) a final order in favor of the accused by a trial or appellate court. RESTATEMENT (SECOND) OF TORTS, § 659.

In her petition, Hammonds stated that "approximately three months [from her arrest], the criminal mischief case was dismissed." In her affidavit, Hammonds stated, "On or about April 5th, 2019, I was arrested for the criminal charge of criminal mischief . . . . I was placed in jail, and had a bond in the amount of $1,500 issued . . . . I had to hire an attorney to defend me for this . . . and the case was ultimately dismissed on June 28th, 2019 . . . by the State's own Motion to Dismiss." Thus, Hammonds has presented evidence that the criminal-mischief case was terminated in her favor.

---

App.—Dallas 1971, no writ); *Parkerson v. Carrouth*, 782 F.2d 1449, 1452 (8th Cir. 1986); *Ledesma v. Dillard Dep't Stores, Inc.*, 818 F. Supp. 983, 986 (N.D. Tex. 1993).

*c. Absence of Probable Cause*

Finally, the Smiths again argue that "it is presumed that the party reporting to the police acted with probable cause," and that "[g]iven the facts as Ms. Smith honestly and reasonably believed them to be, she had probable cause to believe that Ms. Hammonds had engaged in criminal mischief."

However, as we pointed out earlier, Hammonds presented evidence of the parties' "prior bad relations" and the Smiths' "private motivation to harm her" and that, as a result, the Smiths did not act in good faith and did not reasonably believe that Hammonds had committed a crime when reporting the criminal-mischief incident.

*3. Conclusion regarding Prima Facie Case*

We conclude that Hammonds's live pleadings and affidavits, which we are required to consider as evidence under the TCPA, allege facts that if neither rebutted nor contradicted, demonstrate the elements of her cause of action for malicious prosecution. *See Serafine*, 466 S.W.3d at 360; *Lipsky*, 460 S.W.3d at 590; *Suberu*, 216 S.W.3d at 792 n.3; *Richey*, 952 S.W.2d at 517; *see also* TEX. CIV. PRAC. & REM. CODE § 27.006. Because Hammonds made a prima facie case by marshaling clear and specific evidence of each essential element of her malicious-prosecution claims, we overrule issue two. *See* TEX. CIV. PRAC. & REM. CODE Ann. §§ 27.005(c), 27.006.

21

*D. Attorney's Fees*

In their third issue, the Smiths contend that "the case [should] be remanded for a determination of the amount of attorney's fees and costs due the Smiths as, under the applicable version of the TCPA here, the award of such fees and costs is mandatory." Section 27.009 of the Civil Practices and Remedies Code provides that "if the court orders dismissal of a legal action under this chapter, the court shall award to the moving party . . . court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require. TEX. CIV. PRAC. & REM. CODE § 27.009(a)(1).

However, here, the trial court properly *denied* the Smith's motion to dismiss, thus section 27.009(a)(1) does not apply. Accordingly, we overrule the Smiths' third issue.

### III. CONCLUSION

We affirm the trial court's interlocutory order denying the Smiths' TCPA Motion to Dismiss.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Landau and Countiss.