Don CHEREPSKI *v.* Donald WALKER; Andrew
McDonald; the Roman Catholic Diocese of Little Rock,
Arkansas: Andrew J. McDonald, Bishop of the Roman
Catholic Diocese of Little Rock, Arkansas; The Roman
Catholic Church; and Susan Walker

94-1329                                    913 S.W.2d 761

Supreme Court of Arkansas
Opinion delivered January 16, 1996

44

*Mitchell, Blackstock & Barnes*, by: *Jack Waggoner III*; and *John D. Ogles*, for appellant.

*T. Martin Davis*, for appellees Donald and Susan Walker.

*Williams & Anderson*, by: *Leon Holmes* and *Katharine R.*

*Cloud*, for appellee Andrew J. McDonald, Bishop of the Roman Catholic Diocese of Little Rock, Arkansas.

BRADLEY D. JESSON, Chief Justice. This appeal poses the basic question of whether a former husband's lawsuit for breach of fiduciary duty, clergy malpractice, intentional infliction of emotional distress, and negligence is barred by the General Assembly's abolition of alienation of affection actions. *See* Ark. Code Ann. § 16-118-106 (Cum. Supp. 1993). The appellant, Don Cherepski, brought suit against Donald Walker, a Catholic priest, Bishop Andrew McDonald, individually and as agent for the Roman Catholic Diocese of Little Rock, Arkansas, and the Roman Catholic Church, and Susan Walker, appellant's former wife. His amended complaint alleged that, while serving as Chancellor of the Diocese and in charge of the Diocesan Marriage Tribunal, Father Walker began an adulterous affair with Susan. As a result of the appellees' actions, Cherepski claimed he was left emotionally and spiritually devastated.

Bishop McDonald and the Walkers filed separate motions to dismiss, each alleging that Cherepski's suit amounted to a claim for alienation of affection. Bishop McDonald additionally asserted that the claim for clergy malpractice was not recognized in Arkansas and that the claims were barred by the First Amendment, the doctrine of charitable immunity, and the statute of limitations. The trial court granted the appellees' motions to dismiss, yet refused the Walkers's request to impose sanctions under Ark. R. Civ. P. 11 against Cherepski, as well as Cherepski's counter-request for sanctions against the Walkers. Cherepski brings seven points on direct appeal, and the Walkers cross-appeal the trial court's refusal to award Rule 11 sanctions against Cherepski. On direct appeal, we treat the trial court's dismissal of the claims as a granting of summary judgment. We affirm the granting of summary judgment in Bishop McDonald's favor on the grounds that the claims against him were barred by the statute of limitations. We conclude that the claims against the appellees for interference with Cherepski's annulment proceedings are outside our jurisdiction. We affirm the granting of summary judgment in the Walkers' favor on the basis that the suit essentially amounted to an action for alienation of affection. In so holding, it is unnecessary to address Cherepski's remaining points on appeal. On cross-appeal, we affirm the trial court's

refusal to impose sanctions against Cherepski.

### *Facts*

The facts as alleged in Cherepski's amended complaint are as follows. Don and Susan Cherepski were married in 1972. Five children were born to the marriage. In 1986, Susan became employed with the Roman Catholic Diocese of Little Rock. In September of 1988, Donald Walker, a priest, arrived at the Little Rock Diocese from the Philadelphia Diocese, where he had been Chancellor. Upon Cherepski's "information and belief," the Chancellors of the two cities were exchanged due to each Chancellor's alleged involvement with women in his respective Diocese. Walker became Chancellor to Bishop McDonald, a position only second to the Bishop in authority in the Diocese. He was also placed in charge of the Diocese Marriage Tribunal, having authority over Catholic marriages in the Diocese. Shortly after Walker's arrival in Little Rock, he began spending his days off with Susan, taking all day trips out of town with her, and staying at the Cherepski residence several nights a week until 10:30 or 11:00 p.m., drinking alcohol to the point of intoxication. On one occasion in January of 1989, while appellant was stranded in a Dallas ice storm, Walker spent the night at the Cherepski home with Susan. On another occasion, Walker stayed the night with the Cherepskis at their Hot Springs lakehouse. Walker and Susan stayed up until the "wee hours drinking and cavorting in the bedroom," and Susan did not come to bed that evening. While Cherepski felt that Walker's conduct "seemed highly improper," he had no proof at this time that he was having an affair with Susan.

Cherepski and his mother, Edith Cherepski, became increasingly concerned over the accelerating "friendship" between Susan and Father Walker. Although Walker's Little Rock assignment was scheduled to end in 1989, Bishop McDonald extended the assignment through 1990. In September of 1989, Susan sued the appellant for divorce and moved into a home owned and furnished by the Diocese. According to Cherepski, it was "shortly thereafter" when he met with Bishop McDonald and pleaded for his assistance in "removing Walker from his family life." The Bishop refused to discuss the matter, and later denied having met with Cherepski about the problem.

During this time, Edith Cherepski wrote numerous letters to the Bishop asking him to intervene. According to Bishop McDonald, Edith was not a credible source. The complaint further alleged that, after Susan had filed for divorce, and approximately six months prior to the time assignments were to be made in June of 1990, Bishop McDonald reassigned Walker to St. Theresa's Parish, the Cherepskis's church. On March 6, 1990, Bishop McDonald called Cherepski at work and demanded to meet with him. The two met later that day, at which time the Bishop "harassed and intimidated" him, insisting that he not call any priests as witnesses at his upcoming divorce trial.

The Cherepskis were granted a divorce on the appellant's counterclaim on October 11, 1990. Susan was awarded custody of the couple's five children. She subsequently took the children to Albuquerque, New Mexico, without telling Cherepski, who located them two weeks later, only to learn that Susan and Walker had married. Cherepski alleged that this "chain of events" confirmed what he had suspected, but could not prove. Cherepski successfully sought custody of the children and eventually remarried.

Cherepski alleged that Bishop McDonald had a fiduciary duty to promote his spiritual well-being and to refrain from taking any action that would interfere with his spiritual well-being. Cherepski further alleged that the Bishop breached this duty owed him, committed clergy malpractice, and was negligent in allowing various rendezvous between Susan and Father Walker to take place at the expense of the Diocese when he was fully aware of their relationship. It was alleged that Bishop McDonald, who had supervisory authority over Father Walker, was negligent in failing to supervise and shepherd his actions. Cherepski also claimed that the course of conduct engaged by Bishop McDonald constituted the tort of intentional infliction of emotional distress.

Cherepski further asserted that Father Walker, as Chancellor, head of the Diocesan Marriage Tribunal, and later as priest at Cherepski's church, had a fiduciary duty to promote his spiritual well-being and to refrain from taking any action that would interfere with his spiritual well-being. Cherepski alleged breach of fiduciary duty, negligence, and intentional infliction of emo-

tional distress. The complaint further alleged that Susan Walker was an orchestrator, direct participant, co-conspirator, and that she had aided and abetted in all other actions alleged. He also claimed consistent and malicious interference with his attempts to obtain an annulment, resulting in his inability to receive sacraments or to have his remarriage recognized. Cherepski sought damages for emotional pain and suffering, punitive damages, and investigation and attorney's fees.

Bishop McDonald and the Walkers filed separate motions to dismiss. The Walkers attached affidavits and other exhibits to their motion and sought sanctions against Cherepski under Ark. R. Civ. P. 11. Cherepski submitted separate responses to the motions and filed a counter-motion for Rule 11 sanctions against the Walkers, which also included attached exhibits. Following a hearing, the trial court entered an order dismissing Cherepski's complaint with prejudice. The trial court entered a subsequent order denying the Walkers's motion and Cherepski's counter-motion for Rule 11 sanctions. The parties filed timely notices of appeal.

## I. Summary judgment

As the parties presented affidavits and other matters outside the pleadings to the trial court on the motion to dismiss, we will treat the motion as one for summary judgment. *See* Ark. R. Civ. P. 12(b) and (c); *Rankin* v. *Farmers Tractor & Equip. Co.*, 319 Ark. 26, 888 S.W.2d 657 (1994); *Cross* v. *Coffman*, 304 Ark. 666, 805 S.W.2d 44 (1991). Summary judgment should only be granted when there are no genuine issues of material fact and when the case can be decided as a matter of law. *Alexander* v. *Flake*, 322 Ark. 239, 910 S.W.2d 190 (1995). We limit our review to examining the evidentiary items presented below and to determining whether the trial court correctly ruled that those items left no material factor in dispute. *Id.* We view the facts in the light most favorable to the party against whom the motion was filed, and all doubts and inferences are resolved against the moving party. *Id.*

## II. Claims against Bishop McDonald

### A. Statute of limitations

In his motion to dismiss filed below, appellee Bishop

McDonald asserted that Cherepski's case was barred by the three-year statute of limitations for tort actions. Ark. Code Ann. § 16-56-105 (1987). It is well settled that a defense of limitation is an affirmative defense. *Id.*[1]

■ When it is clear on the face of the complaint that the plaintiff's action is barred, the burden shifts to the plaintiff to prove by a preponderance of the evidence that the statute of limitations was tolled. *Id., citing First Pyramid Life Ins. Co.* v. *Stolz,* 311 Ark. 313, 843 S.W.2d 842, *cert. denied,* 114 S. Ct. 290 (1992). On appeal, Cherepski asserts that the statute was tolled due to Bishop McDonald's fraudulent concealment. While such concealment does suspend the running of the statute of limitations, the suspension remains in effect only until the party having the cause of action discovers the concealment or should have discovered it by the exercise of reasonable diligence. *Id.* Cherepski filed this lawsuit on August 16, 1993. Thus, for his complaint to have been timely filed, he must neither have known, nor have been able to discover through reasonable diligence, the alleged fraudulent concealment on the part of Bishop McDonald before August 16, 1990.

■ The complaint alleges that, in September of 1988, Bishop McDonald, aware of the fact that Father Walker had allegedly been involved in sexual misconduct at the Philadelphia Diocese, brought him to the Little Rock Diocese. In 1989, Bishop McDonald extended Walker's assignment. In late 1989 or early 1990, Bishop McDonald assigned Father Walker to Cherepski's church, St. Theresa's. On March 6, 1990, Bishop McDonald had a conversation with Cherepski in which he asked Cherepski not to call any of his priests as witnesses in the upcoming divorce trial. On the face of the complaint, it appears that these allegations against Bishop McDonald are barred. Thus, the burden shifted to Cherepski to prove, by a preponderance of the evidence, that the statute was tolled.

---

[1] The Walkers did not specifically plead the defense of limitations. While they attempt to defer to Bishop McDonald's argument on this point on appeal, they were required to have pleaded this defense below. *Ashley* v. *Eisele,* 247 Ark. 281, 445 S.W.2d 76 (1969) (where statute of limitations was not pleaded, it cannot be relied upon even though the face of the record indicated it might have been a good defense if pleaded).

■ On appeal, Cherepski contends that "examples" of Bishop McDonald's concealment include his denial in a 1990 deposition that he had any knowledge of the relationship between Father Walker and Susan, and Edith Cherepski's letter and "other evidence" showing that the statement in his deposition was false. However, paragraph 8 of Cherepski's amended complaint states that he asked Bishop McDonald to intervene shortly after September of 1989 "to help remove Walker from his family's life." Similarly, Edith Cherepski's letter to Bishop McDonald, in which she complained that Father Walker "is apparently involved in breaking up" the Cherepski family, is dated November 17, 1989. The record simply does not support Cherepski's assertion of fraudulent concealment on the part of Bishop McDonald, and he cannot avail himself of the benefit of tolling of the statute on this basis. *See Alexander* v. *Flake, supra.* The evidence leaves no room for a reasonable difference of opinion that the statute barred these claims against Bishop McDonald; therefore, the trial court correctly ruled that no material factor was left in dispute. Thus, the only remaining claim against Bishop McDonald is the allegation that he and the Walkers have interfered with Cherepski's attempts to have his marriage to Susan annulled.

### III. Claims of interference with annulment proceedings

■ Cherepski alleges that, since October of 1990, Bishop McDonald and the Walkers have consistently and maliciously interfered with his attempts to obtain an annulment. Because of this interference, Cherepski complains that he is unable to have his remarriage recognized or to receive sacraments. These claims are outside our jurisdiction, as we will not entangle ourselves in ecclesiastical matters. *Gipson* v. *Brown*, 295 Ark. 371, 749 S.W.2d 297 (1988); *Kinder* v. *Webb*, 239 Ark. 1101, 396 S.W.2d 823 (1965). Nowhere in Cherepski's amended complaint does he specifically allege a conspiracy on the part of appellees to have him excommunicated from the Catholic Church; rather, his claims are purely religious in nature, as the record indicates that the Tribunal of the Diocese of Dallas adjudicated his annulment petition. As in *Gipson*, the record in this case fails to reveal a compelling state interest that would justify application of our laws in light of the constitutional proscriptions against interference with the Free Exercise Clause of the First Amendment.

Because Cherepski's claims of interference with his annulment proceedings and his ability to receive communion involve matters of church doctrine and discipline, we will not address them.

## IV. Claims against the Walkers

Through the passage of Act 46 of 1989, the General Assembly abolished alienation of affection and criminal conversation as causes of action. *See also* Ark. Code Ann. § 16-118-106 (Cum. Supp. 1993). While the Walkers claim that Cherepski's claim is one for alienation of affection disguised under different labels, Cherepski asserts that the legislature's abolishment of this tort does not bar his cause of action. Particularly, Cherepski contends that his complaint presents "a question of fact as to whether a fiduciary relationship existed," and that it states causes of action for clergy malpractice and outrage.

In defending his claims, Cherepski cites *Destefano* v. *Grabian*, 763 P.2d 275 (Colo. 1988). In that case, a husband sued a Catholic priest and the Diocese of Colorado Springs, alleging that the priest, from whom the husband and his wife had consulted for marriage counseling, had induced his wife into engaging in sexual relations with him. The husband asserted claims for negligence, outrage, and breach of fiduciary duty. The trial court dismissed the action, and the court of appeals affirmed. The Colorado Supreme Court granted certiorari on two issues: (1) whether the state's heart balm statute barred an action against a person who assumes the role of marriage counselor when the counseling relationship results in consensual sexual relations between a counselor and a counselee; and (2) whether the free exercise clause of the First Amendment to the United States Constitution prohibits tort liability for conduct which arose in the context of a counseling relationship between a clergyman and members of his congregation. The Colorado Supreme Court agreed that the husband's claims for negligence and outrage were essentially claims for alienation of affection and criminal conversation and were properly dismissed. The *Destefano* court reversed, however, on the fiduciary duty issue, concluding that the priest, given the nature of the relationship as a marriage counselor to the couple, owed a fiduciary duty; that is, he had a duty not to engage in conduct which might harm the marital relationship.

We are not called upon to decide whether a cause of action would be cognizable in Arkansas in instances involving a counseling relationship, and the holding in *Destefano* was clearly premised on the priest's role as a marriage counselor, not his role as a priest. Thus, *Destefano* is simply not on point here, as it is undisputed that Father Walker was not acting as the Cherepski's marriage counselor. We will now examine the individual claims against Walker.

## A. *Fiduciary duty*

■ In his brief, Cherepski repeatedly maintains that the question of whether a fiduciary duty exists is a question of fact. This is an incorrect statement of the law. The question of what duty is owed is always a question of law. *First Commercial Trust Co.* v. *Lorcin Eng'g*, 321 Ark. 210, 900 S.W.2d 202 (1995); *Keck* v. *American Employment Agency Inc.*, 319 Ark. 294, 652 S.W.2d 2 (1993). Cherepski asserts that, as a devout Catholic, his trust was imposed in the integrity of Father Walker, and that Walker had a duty to promote his spiritual well-being and refrain from taking any action which would interfere with his spiritual well-being.

■ A person is ordinarily not liable for the acts of another unless a special relationship exists between the two parties. *Id.* A person standing in a fiduciary relationship with another is subject to liability to the other for harm resulting from a breach of the duty imposed by the relationship. Restatement (Second) of Torts § 874 (1979); *see also Destefano* v. *Grabian, supra.* Cherepski has not alleged that he entrusted any matter to Father Walker while Walker served as Chancellor or as judge of the Diocesan Marriage Tribunal. While Walker was eventually assigned to Cherepski's church, he did not become Cherepski's priest until after Susan had filed for divorce. Cherepski cites *Adams* v. *H.L. Moore*, 385 S.E.2d 799 (N.C.App. 1989) and *Nelson* v. *Dodge*, 76 R.I. 1, 68 A.2d 51 (1969), in support of his position that Walker owed him a duty; however, both of these cases involved disputes over property transactions. We conclude that Cherepski's claim for breach of fiduciary duty is nothing more than a claim for alienation of affection in disguise. Because the legislature abolished this tort in 1989, there can be no violation of a nonexistent right. Other courts faced with claims for

breach of fiduciary duty in similar factual settings have reached the same result. *See e.g., Dausch* v. *Ryske,* 52 F.3d 1425 (7th Cir. 1994); *Bladen* v. *First Presbyterian Church,* 857 P.2d 789 (Okla. 1993); *Strock* v. *Pressnell,* 527 N.E.2d 1235 (Ohio 1994).

## B. *Clergy malpractice*

■ Cherepski further contends that the trial court erred in dismissing his claim for clergy malpractice against Father Walker. On appeal, he characterizes this claim as a "negligence-based" cause of action. Arkansas does not recognize clergy malpractice as a cause of action. Several other courts confronted with this issue have specifically refused to recognize clergy malpractice as a separate, cognizable cause of action. *See, e.g. Destefano* v. *Grabian, supra; Schieffer* v. *Catholic Archdiocese,* 508 N.W.2d 907 (Neb. 1993). Other courts have held that clergy malpractice was not available under the particular facts alleged. *See, e.g. Bladen v. First Presbyterian Church, supra; Hester* v. *Barnett,* 723 S.W.2d 544 (Mo. App. 1987) *see also* John F. Wagner, Annotation, *Cause of Action for Clergy Malpractice,* 75 A.L.R.4th 750 (Supp. 1995). As clergy malpractice is not cognizable in this state, summary judgment was proper as a matter of law.

## C. *Outrage*

■ We recently set out the elements of the tort of outrage in *Perrodin* v. *Rooker,* 322 Ark. 117, 908 S.W.2d 85 (1995). To establish a claim for outrage, or intentional infliction of emotional distress, a plaintiff must prove: (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was extreme and outrageous and utterly intolerable in a civilized community; (3) the conduct was the cause of the plaintiff's distress; and (4) the plaintiff's emotional distress was so severe in nature that no reasonable person could be expected to endure it. *Id.* at 121.

■ While Cherepski couches his amended complaint in terms of intentional infliction of emotional distress, it is clear that his complaint is in essence an action for alienation of affection. The complaint is replete with references to the accelerating "friendship" between Father Walker and Susan, their alleged

adulterous affair, Cherepski's and Susan's eventual divorce, and Cherepski's resulting emotional pain and suffering. The real character of Cherepski's claim is of an amatory tort. His attempt to label his claim otherwise does not remove it from its true characterization as a claim for alienation of affection, which the legislature has chosen to abolish as a cause of action. Other courts have treated similar claims for outrage as veiled attempts to bring an action for alienation of affection. *Destefano* v. *Grabian, supra; Bladen* v. *First Presbyterian Church, supra; Wilson* v. *Still, supra; Strock* v. *Pressnell, supra.* We conclude that the trial court correctly ruled that Cherepski's claims against the Walkers left no material factors in dispute.

### V. Cross-appeal — Rule 11 sanctions

The Walkers cross-appeal the trial court's denial of sanctions against Cherepski under Ark. R. Civ. P. 11. The trial court also denied Cherepski's counter-motion for sanctions against the Walkers, but Cherepski does not appeal this ruling. In reviewing a trial court's Rule 11 determination, we do so under an abuse of discretion standard. *Ward* v. *Dapper Dan Cleaners & Laundry, Inc.,* 309 Ark. 192, 828 S.W.2d 833 (1992). The Walkers contend that Rule 11 sanctions should have been imposed against Cherepski and his counsel since they knew, or should have known, that all amatory actions were abolished in 1989. The Walkers further assert that the fact that Cherepski's former wife Susan was named as a defendant proves a vengeful motive.

Under Rule 11, an attorney signing a pleading, motion, or other paper on behalf of a party constitutes a certificate that he or she has made a reasonable inquiry (1) into the facts supporting the document or pleading; (2) into the law supporting the document to ensure that it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that he or she (3) did not interpose the document for any improper purpose, such as to harass, to cause unnecessary delay, or to increase the cost of litigation. *Id.* at 194-195, 828 S.W.2d 833. Since the General Assembly abolished alienation of affection as a cause of action in 1989, we have not had occasion to consider whether claims such as those asserted in this case are barred by the legislature's abolition of

amatory torts. The parties have cited numerous cases from other jurisdictions who have considered similar questions. In sum, we cannot say that the trial court abused its discretion in denying the request for sanctions against Cherepski.

Affirmed on direct appeal and cross-appeal.

Special Justices Gene Harrelson, Worth Camp, Jr., and Jill R. Jacoway join in this opinion.

GLAZE, J., concurs.

NEWBERN, CORBIN, and BROWN, JJ., not participating.

TOM GLAZE, Justice, concurring. The majority opinion correctly concludes that Mr. Cherepski's complaint is in essence an action for alienation of affection, and such an action was abolished by Act 46 of 1989, now compiled as Ark. Code Ann. § 16-118-106 (Supp. 1993). In my view, this case ends when this court makes these holdings. Nonetheless, the majority opinion further discusses issues concerning the statute of limitations, claims of negligence and tort of outrage, breach of fiduciary duty, and clergy malpractice. While I believe the majority opinion's discussions of these issues are unnecessary, I do join in the majority court's ultimate decision upholding the trial court's order of dismissal of Cherepski's complaint.