Jimmy W. MILAM and James Milam *v.* BANK OF CABOT
and Bill Thompson, Jointly and Severally

96-899                                          937 S.W.2d 653

Supreme Court of Arkansas
Opinion delivered February 10, 1997

*Ogles Law Firm, P.A.*, by: *John Ogles*, for appellants.

*Williams & Anderson*, by: *Timothy W. Grooms* and *J. Leon Holmes*, for appellee Bank of Cabot.

*Hankins, Hicks, Madden & Blackwood*, by: *Stuart W. Hankins*, for appellee Bill Thompson.

ROBERT L. BROWN, Justice. This appeal is from a summary judgment in favor of appellees Bank of Cabot and Bill Thompson. The appellants, Jimmy W. Milam (son) and James Milam (father), contend that the trial court erred in granting summary judgment

on their claims of defamation, invasion of privacy, negligence, breach of fiduciary duty, and outrage. We disagree and affirm the summary judgment.

On March 23, 1994, the Milams filed their complaint against Thompson and the Bank of Cabot and asserted the claims that are the subject of this appeal. These claims were based on statements allegedly made by Thompson on April 22, 1991, to two railroad policemen for Union Pacific Railroad — William Wood and J.S. Trent. Prior to filing the complaint, the Milams owned and operated Milam Construction Co. Thompson owned and operated Transloading Services, Inc. Although both businesses were independent contractors hired by Union Pacific, they were not in competition with each other. Thompson was also a shareholder and a member of the board of directors of the Bank of Cabot, which is where the Milams maintained their accounts. The complaint sought to impute the conduct of Thompson to the Bank of Cabot under an agency relationship that purportedly arose from Thompson's position as an officer of the bank.

The complaint also asserted that Thompson provided Wood with confidential banking information regarding the financial condition of the Milams. Attached to the complaint was a report prepared by William Wood, dated April 23, 1991, which was acquired by the Milams' counsel under the Freedom of Information Act in August 1993. The report revealed that Jimmy W. Milam was being investigated by Union Pacific Railroad in connection with stolen railroad ties. Included in the Wood report were statements attributed to Thompson: (1) that Jimmy W. Milam's report to the Cabot police department of three stolen tractors was "probably insurance fraud"; (2) that Jimmy W. Milam's net worth was $3,500; (3) that James Milam was worth $630,000; (4) that James Milam was paid $1,500 per month by Milam Construction Co.; (5) that Milam Construction Co. was only showing profits of $500 per month; (6) that Jimmy W. Milam had recently been in a "financial bind"; (7) that Thompson thought it was a good idea to subpoena Jimmy W. Milam's checks from the Bank of Cabot; and (8) that James Milam had a high standard of living.

The appellees answered and moved to dismiss the complaint. They admitted that Thompson met with Wood and Trent at Wood's request and that he answered questions about the activities of Jimmy W. Milam. Appellees asserted in their answer that Thompson did not recall giving any specific financial information to the railroad policemen about the Milams because he did not recall having that information. They also asserted that he had no knowledge of the Wood report, and that the Bank of Cabot had no knowledge of the Thompson interview or Wood report until some time after it had taken place. Appellees denied that Thompson was an officer of the bank but admitted that he was a shareholder and member of the bank's board of directors.

Pleading affirmatively, appellees contended that the defamation claim was barred by the one-year statute of limitation set out in Ark. Code Ann. § 16-56-104(3) (Supp. 1995). They further claimed that Thompson's statements were made pursuant to a contractual duty with Union Pacific, and thus qualified for a privilege as being given during the course of a criminal investigation. They also asserted that the debtor-creditor relationship between the Milams and the Bank of Cabot did not equate to a fiduciary relationship. Finally, they urged that any damages suffered by Jimmy W. Milam were proximately caused by his February 28, 1992 arrest for theft by receiving in connection with railroad ties.[1]

The appellees next moved for summary judgment. Attached to the motion were affidavits from Wood and Trent wherein they averred that they were certified law enforcement officers who questioned Thompson in their official capacities as railroad policemen. Also attached to the motion was an affidavit from Thompson, which stated that he had been a member of the bank's board of directors since 1988. Thompson averred that he held a good-faith belief that he had both a contractual obligation and a civic duty to answer questions posed by Wood and Trent and that he believed the factual information given in response to their questions was accurate. He said he did not know about the existence of Wood's report and that he did not recall making a number of

---

[1] The February 28, 1992 date may have been the date the criminal charge was filed and not the date of the arrest. The record is unclear on this point.

the statements provided in that report. Also accompanying the motion was an affidavit from J.M. Park, chairman of the Bank of Cabot's board of directors, which provided that neither he nor any officer, director, or employee of the bank had any knowledge of the criminal investigation or the interview given by Thompson until after its occurrence.

The Milams responded that the one-year statute of limitation on the defamation claim was tolled because they could not have been "presumed to have had reasonable knowledge of the statement" until its discovery in August 1993. The Milams submitted no affidavits to support their response; nor did they depose Thompson. They did, however, file the deposition of William Wood some eight months after their response to the summary-judgment motion was filed. The appellees later supplemented their motion for summary judgment with deposition testimony from both Jimmy W. Milam and James Milam to establish that neither suffered any damages as a result of the Wood report.

The trial court granted appellees' motions for summary judgment and concluded that the defamation claim was barred by the one-year statute of limitation. With respect to the remaining causes of action, the trial court determined that no genuine issues of material fact existed and that the claims were not supported by law. The trial court further concluded that the Milams had failed to meet proof with proof.

## I. Summary Judgment

The Milams advance the argument that the trial court erred in granting summary judgment. This court's standard of review with respect to summary judgment is as follows:

> In these cases, we need only decide if the granting of summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. All proof submitted must be viewed in a light most favorable to the party resisting the motion, and any doubts and inferences must be resolved against the mov-

ing party. Our rule states, and we have acknowledged, that summary judgment is proper when a claiming party fails to show that there is a genuine issue as to a material fact and when the moving party is entitled to summary judgment as a matter of law.

*Renfro v. Adkins*, 323 Ark. 288, 295, 914 S.W.2d 306, 309-10 (1996) (internal citations omitted); *Cash v. Lim*, 322 Ark. 359, 360-62, 908 S.W.2d 655, 656-57 (1995); *Oglesby v. Baptist Medical Sys.*, 319 Ark. 280, 284, 891 S.W.2d 48, 50 (1995). Once a moving party establishes a *prima facie* entitlement to summary judgment by affidavits or other supporting documents or depositions, the opposing party must demonstrate a genuine issue of material fact by meeting proof with proof. *Renfro v. Adkins, supra.*

## A. Defamation

■ Jimmy W. Milam claims that Thompson's statement that he was probably involved in insurance fraud was defamation *per se*. More precisely, the Milams' complaint alleges slander. It is clear that an action for slander must be brought within one year of publication. Ark. Code Ann. § 16-56-104(3) (Supp. 1995); *Pinkston v. Lovell*, 296 Ark. 543, 759 S.W.2d 20 (1988). Milam asserts that he could not be "presumed to have [had] reasonable knowledge of the statement" about insurance fraud because it was made to Wood in secret and thereafter concealed by Wood. In support of this tolling argument, Milam cites *First Pyramid Life Ins. Co. v. Stoltz*, 311 Ark. 313, 843 S.W.2d 842 (1992). In that case, this court restated what is now the classic language for determining the existence of fraudulent concealment, sufficient to toll a statute of limitation:

> No mere ignorance on the part of the plaintiff of his rights, nor the mere silence of one who is under no obligation to speak, will prevent the statute bar. There must be some positive act of fraud, something so furtively planned and secretly executed as to keep the plaintiff's cause of action concealed or perpetrated in a way that it conceals itself. And if the plaintiff, by reasonable diligence, might have detected the fraud he is presumed to have had reasonable knowledge of it.

*First Pyramid Life Ins. Co. v. Stoltz*, 311 Ark. at 319, 843 S.W.2d at 845, *quoting Wilson v. General Elec. Capital Auto Lease, Inc.*, 311

Ark. 84, 87, 841 S.W.2d 619, 620-21 (1992) (internal citations omitted).

■ The slander claim is clearly time-barred. As the Bank of Cabot points out, once it is clear from the face of the complaint that an action is time-barred, the burden shifts to the plaintiff to prove by a preponderance of the evidence that the statute of limitation was tolled. *See First Pyramid Life Ins. Co. v. Stoltz, supra.* Further, the act of fraudulent concealment must have been committed by those now invoking the benefit of the statute of limitation, namely Thompson and the Bank of Cabot. *See id.; Dupree v. Twin City Bank,* 300 Ark. 188, 777 S.W.2d 856 (1989). There was absolutely no proof presented by the Milams that either Thompson or the Bank of Cabot had any involvement in hiding the fact that a statement concerning insurance fraud was made. In fact, the affidavits of Thompson and J.M. Park provide that they had no knowledge of the Wood report. Jimmy W. Milam, though, certainly knew that he was the subject of investigation for theft by receiving of railroad ties within a year of the Wood report. We conclude that his tolling defense fails for lack of proof.

### B.   Invasion of Privacy

■ The Milams next urge that summary judgment was inappropriate for their invasion-of-privacy claim. Arkansas has recognized the existence of four actionable forms of invasion of privacy:

> (1) *appropriation,* which consists of the use of the plaintiff's name or likeness for the defendant's benefit; (2) *intrusion,* which is the invasion by one defendant upon the plaintiff's solitude or seclusion; (3) *public disclosure of private [f]acts,* which is the publicity of a highly objectionable kind, . . . even though it is true and no action would lie for defamation; and (4) *false light in the public eye,* consisting of publicity which places the plaintiff in a false light before the public.

*Dunlap v. McCarty,* 284 Ark. 5, 9, 678 S.W.2d 361, 363-64 (1984) (emphasis in original). *See Dodrill v. Ark. Democrat Co.,* 265 Ark. 628, 590 S.W.2d 840 (1979).

■ As is pointed out by the Bank of Cabot, the Milams do not state which theory of privacy invasion applies to their case. It is also difficult to ascertain both from the complaint and from the Milams' argument whether the invasion was caused by the alleged acquisition of the financial information from the bank by Thompson or Thompson's alleged communication of it to the railroad policemen. In addition, the Milams do not cite any authority to support violation of their privacy rights, and we decline to research this point for them. *See Roberts v. State*, 324 Ark. 68, 919 S.W.2d 192 (1996); *Ransopher v. Chapman*, 302 Ark. 480, 791 S.W.2d 686 (1990). In sum, we will not develop this claim for the Milams. That was their responsibility. A conclusory allegation by the Milams is not sufficient to ward off summary judgment.

## C. Negligence and Breach of Fiduciary Duty

The Milams alleged in their complaint and urge on appeal that the appellees were negligent and breached a fiduciary duty when confidential banking information was disclosed to Wood and Trent. Also, they assert that the Bank of Cabot itself was negligent in failing to supervise Thompson and in not adequately protecting their confidential financial records. While these appear to be very separate claims, appellants interweave them and do not distinguish them in their argument.

■ In support of their twin claims, the Milams quote extensively and almost verbatim from an ALR annotation without crediting American Law Reports for the research. *See* Edward L. Raymond, Jr., Annotation, *Bank's Liability, Under State Law, For Disclosing Financial Information Concerning Depositor or Customer*, 81 A.L.R.4th 377 (1990 & Supp. 1996). We do not countenance the detailed borrowing of legal arguments from treatises without proper acknowledgment of the source. But in addition to this lapse, the Milams do not present any analysis of the annotation or discuss which of the referenced cases this court should follow. Nor is there any mention of the facts of the instant case in connection with the cases briefed from other jurisdictions; nor any attempt to apply these facts to a specific legal standard.

■ We emphasized in *J. W. Reynolds Lumber Co. v. Smackover State Bank*, 310 Ark. 342, 836 S.W.2d 853 (1992), the necessity of factual underpinnings to establish a fiduciary relationship with a bank:

> Here there were no facts to indicate that Reynolds and the Bank had any relationship beyond that of debtor/creditor. That being so, there was no fiduciary relationship and the chancellor did not err in dismissing the claim based on implied trust.

*J. W. Reynolds Lumber Co. v. Smackover State Bank*, 310 Ark. at 347, 836 S.W.2d at 855. *See also Marsh v. National Bank of Commerce*, 37 Ark. App. 41, 822 S.W.2d 404 (1992)(noting that the customer asserting a fiduciary relationship with his bank has the burden of proving the relationship is beyond that of debtor/creditor). We hold that the Milams failed to submit any proof to convert what is essentially a debtor/creditor relationship with the Bank of Cabot into a fiduciary one. Nor is proof presented to establish that Thompson was acting as an agent of the bank when he met with the railroad policemen in April 1991 or that there was any failure to supervise on the part of the bank. In short, the Wood report, standing alone, is not sufficient to prevent summary judgment.

## D. Outrage

■ The Milams' final claim concerns the tort of outrage. This court has stated that we take "a very narrow view of claims of outrage." *Renfro v. Adkins*, 323 Ark. at 299, 914 S.W.2d at 311. We have said that in order to succeed on this claim, a plaintiff must prove:

> (1) the defendant intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was extreme and outrageous and was utterly intolerable in a civilized community; (3) the defendant's conduct was the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Hollomon v. Keadle,* 326 Ark. 168, 931 S.W.2d 413 (1996); *Croom v. Younts,* 323 Ark. 95, 913 S.W.2d 283 (1996); *Cherepski v. Walker,* 323 Ark. 43, 913 S.W.2d 761 (1996).

It is clear that the appellees are entitled to summary judgment on the outrage claim because the proof presented by the appellees on lack of emotional distress on the part of the Milams went uncontested.

Affirmed.