2012 Ark. 369

**Patricia CANNADY, Individually and as Administratrix of The Estate of Anne Pressly, Deceased, Appellant**

v.

**ST. VINCENT INFIRMARY MEDICAL CENTER, Jay Holland, M.D., Candida Griffin, And Sarah Elizabeth Miller, Appellees.**

No. 11–1298.

Supreme Court of Arkansas.

Oct. 4, 2012.

Rehearing Denied Nov. 8, 2012.

McDaniel & Wells, P.A., Jonesboro, by: Bobby McDaniel; and J.G. "Gerry" Schulze, Little Rock, for appellant.

Munson, Rowlett, Moore and Boone, P.A., by: Timothy L. Boone, Sarah E. Greenwood, Little Rock, and Beverly A. Rowlett, for appellee St. Vincent Infirmary Medical Center.

JIM GUNTER, Justice.

Appellant appeals the grant of appellees' motion for summary judgment and argues that the circuit court erred in finding that (1) the claim for invasion of privacy did not survive the death of the decedent; (2) the outrage claim did not survive the death of the decedent and could not be asserted as a relational wrong by the decedent's survivors; and (3) St. Vincent could not be held vicariously liable. Because this case presents an issue of substantial public interest and needing clarification or development of the law, this court has jurisdiction pursuant to Ark. Sup.Ct. R. 1–

2(b)(4) & (5). We affirm on the first point and reverse on the remaining points.

In a complaint filed October 16, 2009, appellant, individually and as the administratrix of the Estate of Anne Pressly, alleged claims of invasion of privacy and outrage against appellees St. Vincent Infirmary Medical Center, Dr. Jay Holland, Candida Griffin, and Sarah Elizabeth Miller.[1] The complaint alleged that Holland, Griffin, and Miller had each accessed the medical records of Anne Pressly with no legitimate reason and that St. Vincent took no action to restrict such access to medical records available through its electronic database system. An amended complaint was filed on January 7, 2010, adding that defendants Holland, Griffin, and Miller had each pled guilty to a violation of 42 U.S.C. § 1320(d)–6(a)(2), which governs the wrongful disclosure of individually identifiable health information.

Appellees each filed separate answers and argued, inter alia, that the complaint failed to state facts upon which relief could be granted because any alleged claim for invasion of privacy or outrage did not survive the death of the decedent. On April 20, 2011, St. Vincent filed a motion for summary judgment, again arguing that a claim for invasion of privacy does not survive the death of a decedent and that the claim for the tort of outrage must also fail because it is based on the alleged invasion of privacy. In response, appellant argued that, under Arkansas's survival statute, codified at Ark.Code Ann. § 16–62–101 (Repl.2005), claims for intrusion, a category of invasion of privacy claims, do survive the death of a decedent. Appellant also denied that the claim for outrage was dependent on the claim for invasion of

1. Catholic Health Initiatives and First Initiatives Insurance Company were also named as defendants but were later dismissed with prejudice by agreement of the parties. The complaint also named John Does # 1–# 15 as defendants, but those claims have been abandoned pursuant to Ark. R.App. P. –Civ. 3(e)(vi).

privacy. Appellees Griffin, Holland, and Miller also filed separate motions for summary judgment, all of which adopted and joined the motion for summary judgment filed by St. Vincent.

After a hearing on the matter held on October 4, 2011, the court entered an order on October 14, 2011, granting summary judgment in favor of appellees. The court concluded:

A. Arkansas Code Ann. § 16–62–101(a)(1) does not provide for the claim of invasion of privacy to survive the death of the decedent.

B. The claim for outrage fails because the claim is based on the same conduct as the claim for invasion of privacy; therefore, does not survive the death of the decedent and is not capable of assertion as a relational wrong by the decedent's survivors;

C. Because the claims of invasion of privacy and the tort of [o]utrage fail, St. Vincent's Infirmary Medical Center cannot be held vicariously liable for the conduct of its employees.

(Footnotes omitted.) Appellant filed a timely notice of appeal from this order on November 1, 2011.

■ Summary judgment may only be granted when there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *See K.C. Props. of Nw. Ark., Inc. v. Lowell Inv. Partners*, 373 Ark. 14, 280 S.W.3d 1 (2008). Ordinarily, upon reviewing a court's decision on a summary-judgment motion, we would examine the record to determine if genuine issues of material fact exist. *See Travis Lumber Co. v. Deichman*, 2009 Ark. 299, 319 S.W.3d 239. However, in a case such as this one, which does not involve the question of whether factual issues exist but rather the application of legal rules, we simply determine whether appellees were entitled to judgment as a matter of law. *See id.*

■ For appellant's first point on appeal, she argues that the circuit court erred in finding that the survival statute, Ark.Code Ann. § 16–62–101(a)(1), did not provide for the claim of invasion of privacy to survive the death of the decedent. This court has recognized that there are four actionable forms of the tort of invasion of privacy: (1) appropriation; (2) intrusion; (3) public disclosure of private facts; and (4) false light in the public eye. *Jegley v. Picado*, 349 Ark. 600, 80 S.W.3d 332 (2002). In this case, appellant claimed a violation of the second form, intrusion. This court discussed the claim of intrusion in *Wal–Mart Stores, Inc. v. Lee*, 348 Ark. 707, 719–20, 74 S.W.3d 634, 644 (2002):

> In *Dodrill v. Arkansas Democrat Co.*, 265 Ark. 628, 590 S.W.2d 840 (1979), this court adopted the approach of the Restatement (Second) of Torts, which delineates four separate torts grouped under "invasion of privacy." The privacy tort covers behavior harmful to the plaintiff even though there is no injury to his reputation. *Dunlap v. McCarty*, 284 Ark. 5, 678 S.W.2d 361 (1984). Intrusion has been recognized in Arkansas as one of the four actionable forms of invasion of privacy. *Milam v. Bank of Cabot*, 327 Ark. 256, 937 S.W.2d 653 (1997). Intrusion is the invasion by one defendant upon the plaintiff's solitude or seclusion. *Id.*

Although Arkansas courts have seldom adjudicated intrusion claims, the United States Court of Appeals for the Eighth Circuit opined that, because this court adopted the Restatement approach, Arkansas courts would likely follow the Restatement's analysis of the tort of intrusion. *Fletcher v. Price*

*Chopper Foods of Trumann, Inc.,* 220 F.3d 871 (8th Cir.2000). The Restatement defines liability for intrusion upon seclusion as follows:

> One who intentionally intrudes, physically or otherwise, upon the solicitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

*Id.* at 875 (quoting Restatement (Second) of Torts § 652B (1977)). According to the Eighth Circuit, the tort consists of three parts: (1) an intrusion; (2) that is highly offensive; (3) into some matter in which a person has a legitimate expectation of privacy. *Id.* A legitimate expectation of privacy is the "touchstone" of the tort of intrusion. *Id.* at 877

In the instant case, appellant acknowledges that at common law, tort claims did not survive the death of the plaintiff. However, appellant argues, the Arkansas General Assembly changed that law by statute with the enactment of § 16–62–101, which provides:

> (a)(1) For wrongs done to the person or property of another, an action may be maintained against a wrongdoer, and the action may be brought by the person injured or, after his or her death, by his or her executor or administrator against the wrongdoer or, after the death of the wrongdoer, against the executor or administrator of the wrongdoer, in the same manner and with like effect in all respects as actions founded on contracts. (2) Nothing in subdivision (a)(1) of this section shall be so construed as to extend its provisions to actions of slander or libel.

Ark.Code Ann. § 16–62–101 (Repl.2005). In *Ward v. Blackwood,* 41 Ark. 295, 298 (1883), we interpreted an earlier version of this statute to mean that "[t]he language of the statute includes every action, the substantial character of which is a bodily injury, or damage of a physical character, but does not extend to torts which do not directly affect the person, but only the feelings or reputation, such as malicious prosecution."

Appellant argues that, based on the language of the statute, the only exceptions to the survival statute are actions for slander or libel and that an action for intrusion does survive the decedent. Appellant attempts to distinguish the language in *Ward* by arguing that the opinion treated malicious prosecution as an injury to reputation, and appellant expands that interpretation to state that the "only class of tort that does not survive the death of a decedent under Arkansas law is a claim in which the touchstone is an injury to reputation." The "touchstone" of intrusion is a legitimate expectation of privacy, appellant asserts, and such a claim is preserved by the survival statute. Appellant acknowledges that there is a split of authority in other states as to whether a claim for intrusion survives the death of a decedent but argues that this court should follow *Reid v. Pierce County,* 136 Wash.2d 195, 961 P.2d 333 (1998). In *Reid,* the Washington Supreme Court held that the immediate relatives of a decedent have a protectable, common-law privacy interest in the autopsy records of the decedent and should be allowed to proceed to trial against county employees accused of improperly obtaining and displaying autopsy photographs.

In response, St. Vincent argues that *Ward* extended the exceptions in the survival statute to include other torts "which do not directly affect the person, but only the feelings or reputation." 41 Ark. at 298. St. Vincent also cites *Arkansas Life Ins. Co. v. American National Life Ins.*

*Co.*, 110 Ark. 130, 161 S.W. 136 (1913), in which this court held that claims made on behalf of a defunct corporation did not survive the corporation's demise:

> The injuries as alleged to the Mutual Industrial Insurance Company were all torts in the nature of slander, libel, malicious prosecution, fraudulent conspiracy to injure and destroy business, etc., etc. Actions growing out of wrongs of this nature would not survive, but were peculiar to the Mutual Industrial Insurance Company, and died when it went out of existence. The causes of action that survive are assignable; those that do not survive are not assignable. 4 Cyc. 23. Now the causes of action that survive are those "for wrongs done to the person or property of another." Section 6285, Kirby's Digest. The statute means injuries of a physical character to actual, visible, and tangible property, and not to property rights or interests which in their nature are invisible and intangible.

*Id.* at 137, 161 S.W. at 138. Finally, St. Vincent cites an Eighth Circuit case, *Parkerson v. Carrouth,* 782 F.2d 1449 (8th Cir.1986), which cited *Ward* and *American Life* with approval and noted that this court had not "overruled, reached a result inconsistent with, or even questioned the holdings of *Ward* or *Arkansas Life.*" *Id.* at 1453.

St. Vincent contends that appellant is simply incorrect in her interpretation of the survival statute as saving every cause of action except slander and libel. St. Vincent notes that despite case law that has broadened the exceptions, the legislature has not amended the statute to make clear that only slander and libel do not survive a decedent's death, which further supports the case law's construction of the statute.

With regard to cases from other states, St. Vincent cites this court to *Nicholas v. Nicholas,* 277 Kan. 171, 83 P.3d 214 (2004) (holding that an invasion of privacy action for intrusion upon seclusion did not survive the death of the alleged victim), and *Loft v. Fuller,* 408 So.2d 619 (Fla.Dist.Ct.App. 1981) (noting that, generally, an action for intrusion has been considered personal in nature), both of which cite the Restatement (Second) of Torts § 652I. The Restatement provides that

> [e]xcept for the appropriation of one's name or likeness, an action for invasion of privacy can be maintained only by a living individual whose privacy is invaded.

Comment:

a. The right protected by the action for invasion of privacy is a personal right, peculiar to the individual whose privacy is invaded. The cause of action is not assignable, and it cannot be maintained by other persons such as members of the individual's family, unless their own privacy is invaded along with his. The only exception to this rule involves the appropriation to the defendant's own use of another's name or likeness. (See § 652C, particularly Comment a).

b. In the absence of statute, the action for the invasion of privacy cannot be maintained after the death of the individual whose privacy is invaded. In a few states particular statutes permit the survival of an action for invasion of privacy that has occurred before death. In a smaller number of states there is statutory authorization for an action on the part of surviving relatives for invasion of the privacy of one who is already deceased, with the invasion occurring after his death. Since appropriation of name or likeness is similar to impairment of a property right and involves an aspect of unjust enrichment of the de-

fendants or his estate, survival rights may be held to exist following the death of either party.

Finally, St. Vincent distinguishes *Reid, supra,* by noting that it involved the publication of photographs after a decedent's death, which even the Restatement provides would survive as a tort for appropriation of one's likeness.[2]

Based on the foregoing, we hold that the circuit court did not err in finding that Ark.Code Ann. § 16–62–101(a)(1) does not provide for the claim of invasion of privacy to survive the death of the decedent. This holding is in line with this court's adoption of the Restatement (Second) of Torts and our case law, most notably *Ward.* Thus, we affirm the grant of summary judgment on this point.

■ For her second point on appeal, appellant contends that the circuit court erred in granting summary judgment on her claim for outrage. In its order, the court found that the claim for outrage failed because it was based on the same conduct as the claim for invasion of privacy. The court found that for this reason, the claim did not survive the death of the decedent, nor could it be asserted as a "relational wrong" by the decedent's survivors. As support for this finding, the court cited to St. Vincent's reply to appellant's response to the motion for summary judgment, specifically page twelve of the reply, wherein St. Vincent ⌊9argued that the cause of action for the tort of outrage was merely a disguised attempt at the invasion-of-privacy claim and should be rejected.

On appeal, appellant argues that the behavior of the individual appellees constituted the tort of outrage and denies that this cause of action is just another way to allege invasion of privacy. Instead, appellant contends that the outrage claim is for the emotional distress suffered by the survivors upon learning of the invasion into the decedent's privacy. To support her argument, appellant cites *Travelers Insurance Co. v. Smith,* 338 Ark. 81, 991 S.W.2d 591 (1999), in which this court held that there was substantial evidence to support the jury's conclusion that the appellants had committed the tort of outrage by failing to promptly obtain an autopsy and effectively holding the decedent's body hostage, which hindered the embalming of the body and delayed both the funeral and the family's grieving process. Appellant argues that, in the present case, the survivors' emotional anguish is akin to the emotional distress suffered by the family in *Travelers.*

With regard to the court's finding that the outrage claim could not be asserted as a "relational wrong," appellant asserts that this characterization of the claim appears to come from *Boyd v. Thomson Newspaper Publishing Co.,* 6 Media L. Rptr. 1020 (W.D.Ark.1980), in which the court held that relatives of a deceased person may not recover for any invasion of their own privacy brought about by publicity concerning the decedent. In that opinion, the court characterized this as a "relational right of privacy." Appellant denies that the outrage claim in the present case is a "relational" tort and reiterates that the claim is separate from any invasion of privacy claim made on behalf of the decedent.

⌊10In response, St. Vincent argues, as it did below, that because any claim of the

---

**2.** Appellee Dr. Jay Holland filed a separate response brief in which he adopted St. Vincent's arguments by reference but also added his own analysis of why the circuit court did not err in granting summary judgment. His argument mainly focuses on the intrusion claim and does not substantially differ from the argument offered by St. Vincent.

decedent for invasion of privacy did not survive her death, and because no "relational" right of privacy is recognized, "a claim for the tort of outrage based upon the allegations that defendants should have known their invasion of privacy would result in emotional distress must fail." In support, St. Vincent cites *Cherepski v. Walker*, 323 Ark. 43, 913 S.W.2d 761 (1996), in which a husband asserted various claims, including a claim of outrage against his church and several priests, after one of the priests had an affair with his wife. In affirming a grant of summary judgment against the husband, this court explained:

> While Cherepski couches his amended complaint in terms of intentional infliction of emotional distress, it is clear that his complaint is in essence an action for alienation of affection.... The real character of Cherepski's claim is of an amatory tort. His attempt to label his claim otherwise does not remove it from its true characterization as a claim for alienation of affection, which the legislature has chosen to abolish as a cause of action.

*Id.* at 54–55, 913 S.W.2d at 767. St. Vincent argues that this case presents a similar situation and that this court should reject, as the circuit court did, appellant's attempt to disguise the invasion-of-privacy claim as an outrage claim.

We hold that the circuit court must be reversed on this point. The crux of the court's order was that the outrage claim failed because it was based on the "same conduct" as the privacy-violation claim. However, neither St. Vincent nor the circuit court has cited to any authority for the proposition that two separate claims cannot be based on the same conduct. In addition, the outrage claim was not made on behalf of the decedent, but on appellant's own behalf, and the court failed to make any findings regarding whether sufficient facts existed to state a cause of action for outrage. Thus, we reverse the court's order on this point and remand for further proceedings.

For her final point on appeal, appellant argues that the circuit court erred in finding that because the claims of invasion of privacy and the tort of outrage both failed, St. Vincent could not be held vicariously liable for the conduct of its employees. Because we are reversing on the outrage claim, we likewise reverse on this point as it relates to the outrage claim and remand.

Affirmed in part; reversed and remanded in part.

DANIELSON, J. concurs.

DANIELSON, J. concurring.

I concur that the circuit court must be reversed and remanded in part and write only to clarify the circuit court's error in regard to Cannady's claim of outrage. The circuit court found that Cannady's outrage claim fell because it was based on the same conduct as the invasion of privacy and, therefore, did not survive the death of the decedent and could not be asserted as a relational wrong. The error in that finding is that while the privacy claim was clearly only Pressly's to allege, the claim of outrage was also asserted as personal to Cannady and there is no reason that Cannady could not assert that she was outraged by the conduct of the appellees. The circuit court correctly found that Pressly's claim of outrage did not survive her death; however, there was not a proper finding as to appellant's claim.

To establish a claim for outrage, a plaintiff must demonstrate the following elements: (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct

was extreme and outrageous, beyond all possible bounds of decency, and was utterly intolerable in a civilized community; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it. *See Rees v. Smith*, 2009 Ark. 169, 301 S.W.3d 467. The elements clearly do not require that the actor know who his or her actions would cause distress to. In other words, simply because the invasion was into Pressly's privacy, a fact finder could theoretically find that the actor should have known that his conduct would result in emotional distress not only to Pressly, but to others as well. The circuit court's order made no findings as to whether Cannady's claim satisfied the elements required for outrage. For this reason, we cannot review whether that particular claim should have survived summary judgment and, therefore, we must reverse and remand the court's order on that point.